**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:23-cv-81314-AMC**

JOHN STEWART, on behalf of the NextEra
Energy, Inc. Employee Retirement Savings
Plan, individually and as a representative of a
class of participants and beneficiaries,

                      Plaintiff,

      v.

NEXTERA ENERGY, INC.,

                      Defendant.

**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED**
**CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

FACTUAL BACKGROUND .........................................................................................................3

PROCEDURAL HISTORY.............................................................................................................6

ARGUMENT ..................................................................................................................................9

I.      THE AMENDED COMPLAINT DOES NOT ALLEGE A BREACH OF THE
FIDUCIARY DUTY OF PRUDENCE REGARDING THE COMPENSATION
PAID TO FIDELITY ...........................................................................................................9

      A.      Plaintiff's General Allegations That the Plan's Recordkeeping Fees Were
Too High Do Not State a Claim................................................................................10

      B.      Plaintiff Does Not Identify Meaningful Benchmarks to Support His Claim
That Plan Recordkeeping Fees Were Excessive .......................................................11

      C.      ERISA Does Not Require Plan Sponsors to Conduct RFPs, Or to Conduct
RFPs at Specific Intervals, to Satisfy Their Duty of Prudence ..............................15

II.     PLAINTIFF FAILS TO IDENTIFY A SINGLE MUTUAL FUND IN THE
PLAN THAT MAKES REVENUE SHARING PAYMENTS TO THE
RECORDKEEPER ............................................................................................................16

III.    THE AMENDED COMPLAINT DOES NOT ALLEGE A BREACH OF THE
FIDUCIARY DUTY OF PRUDENCE BASED ON "INDIRECT
COMPENSATION" PAID TO FIDELITY THROUGH FLOAT INCOME
BECAUSE FLOAT IS NOT A PLAN ASSET .................................................................17

IV.    PLAINTIFF HAS NOT EXHAUSTED HIS ADMINISTRATIVE REMEDIES
FOR THE FORFEITURE CLAIM .....................................................................................18

V.     THE COMMITTEE'S INTERPRETATION OF THE FORFEITURE
PROCEDURES SPECIFIED IN THE PLAN DOCUMENT IS ENTITLED TO
DEFERENCE ....................................................................................................................22

CONCLUSION..............................................................................................................................24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AFL-CIO v. City of Miami*,
  637 F.3d 1178 (11th Cir. 2011) ...................................................................................16

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ...............................................................................14, 15, 16

*American Dental Ass'n v. WellPoint Health*,
  494 F. App'x 43 (11th Cir. 2012) .................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................9, 16

*Barragan v. Honeywell Int'l Inc.*,
  2024 WL 5165330 (D.N.J. Dec. 19, 2024).................................................................23

*Barrett v. O'Reilly Automotive, Inc.*,
  112 F.4th 1135 (8th Cir. 2024) ...............................................................................10, 15

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).......................................................................................................9

*Bickley v. Caremark RX, Inc.*,
  461 F.3d 1325 (11th Cir. 2006) .................................................................................6, 18

*Boyle v. TracFone Wireless, Inc.*,
  2024 WL 3691859 (11th Cir. Aug. 7, 2024).................................................................16

*Conkright v. Frommert*,
  559 U.S. 506 (2010).....................................................................................................22

*Cotton v. Massachusetts Mutual Life Insurance Co.*,
  402 F.3d 1267 (11th Cir. 2005) .....................................................................................9

*Del Castillo v. Community Child Care Council of Santa Clara County, Inc.*,
  2019 WL 6841222 (N.D. Cal. Dec. 16, 2019).............................................................15

*Dimou v. Thermo Fisher Scientific Inc.*,
  2024 WL 4508450 (S.D. Cal. Sept. 19, 2024).............................................................23

*Espinoza v. Baker Hughes Holdings, Inc.*,
  LLC, 2025 WL 449439 (S.D. Tex. Feb. 10, 2025).................................................17, 18

ii

*Federation of Americans for Consumer Choice, Inc. v. U.S. Department of Labor*,
  742 F. Supp. 3d 677 (E.D. Tex. 2024) ..................................................................................18

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)........................................................................15

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)................................................................................................................14

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989)...........................................................................................................3, 22

*Fritton v. Taylor Corp.*,
  2022 WL 17584416 (D. Minn. Dec. 12, 2022).......................................................................15

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ..................................................................................................17

*Holmes v. Colorado Coalition for Homeless Long Term Disability Plan*,
  762 F.3d 1195 (10th Cir. 2014) ..............................................................................................21

*Horton v. United of Omaha Life Insurance Co.*,
  244 F. Supp. 3d 1253 (N.D. Ala. 2017)..................................................................................18

*Hughes v. Northwestern University*,
  595 U.S. 170 (2022)............................................................................................................4, 10

*Hutchins v. HP Inc.*,
  2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ............................................................................23

*In re Fidelity ERISA Float Litigation*,
  829 F.3d 55 (1st Cir. 2016).....................................................................................................17

*Johnson v. City of Atlanta*,
  107 F.4th 1292 (11th Cir. 2024) ...............................................................................................3

*Johnson v. PNC Financial Services Group*,
  2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) ..........................................................................15

*Landa v. Aon Corp. Excess Benefit Plan*,
  2022 WL 3594916 (S.D. Fla. Aug. 23, 2022)......................................................................3, 21

*Lawson v. McGee*,
  2021 WL 2515683 (S.D. Fla. June 18, 2021) ...........................................................................3

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024)................................................................................................................18

iii

*Marks v. Trader Joe's Co.*,
2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) .........................................................................17

*Mateya v. Cook Group Inc.*,
2023 WL 4608536 (S.D. Ind. June 16, 2023).....................................................................13, 15

*Matney v. Barrick Gold of North America*,
80 F.4th 1136 (10th Cir. 2023) ...............................................................................12, 13, 16

*Matney v. Barrick Gold of North America, Inc.*,
2022 WL 1186532 (D. Utah Apr. 21, 2022), *aff'd*, 80 F.4th 1136 (10th Cir. 2023) .........15, 17

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ................................................................................................13

*Naylor v. BAE Systems, Inc.*,
2024 WL 4112322 (E.D. Va. Sept. 5, 2024)..........................................................................23

*Perrino v. Southern Bell Telephone & Telegraph Co.*,
209 F.3d 1309 (11th Cir. 2000) ......................................................................................19, 21

*Pizarro v. Home Depot Inc.*,
111 F.4th 1165 (11th Cir. 2024) .....................................................................................10, 11

*Probst v. Eli Lilly & Co.*,
2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) ..........................................................................12

*Riley v. Olin Corp.*,
2022 WL 2208953 (E.D. Mo. June 21, 2022) ........................................................................15

*Rosen v. Prudential Retirement Insurance & Annuity Co.*,
2016 WL 7494320 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017)..............17

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) ..........................................................................10, 12, 13, 14

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ..............................................................................................13

*Torres v. Pittston Co.*,
346 F.3d 1324 (11th Cir. 2003) ............................................................................................20

*Turner v. Williams*,
65 F.4th 564 (11th Cir. 2023) ................................................................................................9

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) ................................................................................................17

*Watts v. BellSouth Telecommunications, Inc.*,
    316 F.3d 1203 (11th Cir. 2003) ......................................................................................18

*Wehner v. Genentech, Inc.*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ....................................................................15

*Williams v. Centene Corp.*,
    2023 WL 2755544 (E.D. Mo. Mar. 31, 2023) ..........................................................15, 17

**Docketed Cases**

*Mirabal v. NCR Corp. Plan Admin. Committee*,
    No. 22-cv-04879-SCJ, Slip Op. (N.D. Ga. Feb. 6, 2024), Dkt. No. 50 ...................................18

**Statutes & Regulations**

29 C.F.R. § 2560.503-1(i)(ii) .......................................................................................................21

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282 (proposed Feb. 27,
    2023) ...............................................................................................................................22, 23

**Other Authorities**

DOL Form 5500, https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-
    advisers/plan-administration-and-compliance/reporting-and-filing/form-
    5500/instructions-for-form-5500-annual-report.pdf ...............................................................4

H.R. Rep. No. 99-841, Vol. II (1986) ........................................................................................23

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, NextEra Energy, Inc. ("NextEra" or the "Company") respectfully moves to dismiss the First Amended Class Action Complaint (ECF No. 27) ("Amended Complaint") with prejudice.

## **INTRODUCTION**

Plaintiff brings this action to complain that fees paid by the NextEra Energy, Inc. Employee Retirement Savings Plan ("Plan") to a third-party recordkeeper were excessive.  He also complains that NextEra incorrectly allocated forfeited amounts pursuant to the plan documents.  For the reasons set forth below, the Amended Complaint should be dismissed.

*First*, the Amended Complaint does not plausibly allege that NextEra breached any fiduciary duty under ERISA regarding payments to the Plan's recordkeeper (Fidelity).  Retaining a recordkeeper at an annual cost that is more than Plaintiff's arbitrary, say-so limit of $21 per participant is not a breach of the fiduciary duty of prudence.  The Supreme Court has advised that fiduciary oversight of a plan involves difficult tradeoffs between plan features, including service levels, and costs.  Plan fiduciaries evaluate the service needs of their participants and make judgments about the features, including services, that will assist participants to achieve their retirement goals.  Some of those features and services are more expensive than the features and services offered in a bare-boned retirement plan.  ERISA does not require that the plan fiduciary provide the most bare-boned plan with the fewest features and lowest service levels.  Rather, it gives plan fiduciaries the flexibility to design a plan that they believe best meets participant needs.  (Section I.A.)

The Amended Complaint does not identify any meaningful benchmarks (or the recordkeeper costs of plans having substantially similar features and services) to support a claim that NextEra paid excessive recordkeeping fees for the features and services provided in the Plan. In place of pleading meaningful benchmarks, Plaintiff selects five retirement plans with

supposedly lower recordkeeping fees but wholly fails to plead any facts about the nature, quality or extent of the features and services provided under these so-called comparison plans, or how those features and services are analogous to those available in the NextEra Plan.  In the absence of such facts, Plaintiff cannot show that the comparisons are "apples-to-apples," which is what the law requires in order for the Court to draw an inference of imprudence.  (Section I.B.) NextEra also did not breach a duty of prudence by failing to conduct a Request for Proposal ("RFP").  ERISA does not require a plan fiduciary to conduct an RFP and failure to do so is not a breach of the duty of prudence as a matter of law.  (Section I.C.)

*Second*, Plaintiff claims that the recordkeeping fees paid to Fidelity were excessive due to the receipt by Fidelity of "indirect compensation" through mutual funds offered on the Plan menu.  Such payments are known as "revenue share" arrangements.  Plaintiff fails his obligation under Rule 8 to challenge "revenue share" payments allegedly made to Fidelity because Plaintiff fails to allege—as he must—that *any* mutual fund on the Plan menu in fact paid revenue share to Fidelity.  (Section II.)

*Third*, Plaintiff's "float" allegations do not support a claim for breach of fiduciary duty because "float" is not a plan asset, and NextEra had no duty to monitor those amounts.  (Section III.)

*Fourth*, the Court should dismiss Plaintiff's claim that the Plan incorrectly applied forfeitures because Plaintiff failed to exhaust administrative remedies on this claim.  (Section IV.)

*Last,* the Plan fiduciary committee rejected Plaintiff's reading of the forfeiture methodology in the Plan document.  NextEra was not required to apply forfeitures to offset recordkeeping fees paid directly by participants because "Plan administrative expenses," as used

in the Plan document, means administrative expenses paid by the Plan or the Company, not per-participant recordkeeping fees charged to participant accounts.  The Committee's reasonable interpretation of this term in the Plan document is entitled to deference under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).  (Section V.)

The Court should dismiss the Amended Complaint with prejudice.

## FACTUAL BACKGROUND

***The Plan.***  NextEra offers a defined-contribution Plan to its employees.  Am. Compl. ¶ 21.  More than 20,000 current and former employees (known as Plan "participants") have positions in the Plan.  *Id.* ¶¶ 1.  The Plan is generous to its participants and provides minimum matching contributions of between 25% and 100% on the participant's first 7% of eligible earnings.  *Id.* ¶¶ 5, 26; *see* Declaration of Brad E. Konstandt, dated March 12, 2025 ("Konstandt Decl."), Ex. A at 18.[1]  The matching contributions are provided in the form of NextEra Energy common stock through an Employee Stock Ownership Plan ("ESOP").[2]  By contrast with many basic retirement plans, NextEra has "bells and whistles" in its Plan, including the flexibility for participants to designate whether they want some or all of their assets held in before-tax or after-

---

[1]     The Amended Complaint incorporates the "plan document" and reports that NextEra filed with the Department of Labor ("DOL") about compensation to third parties in 2021 (the "Form 5500") by reference.  *See* Am. Compl. ¶¶ 3-8, 22, 26-31, 33, 35, 67, 73, 101, 106, 109, 127, and 145.  The Court may take judicial notice of these documents on a motion to dismiss because they are central to Plaintiff's claim and not subject to reasonable dispute.  *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (permitting consideration of documents "under the incorporation-by-reference doctrine" that are "central to the plaintiff's claims" and where plaintiff did not challenge their authenticity).  The Amended Complaint also refers to and quotes from communications between Plaintiff and the Committee about the administrative proceeding.  *See* Am. Compl. ¶¶ 60-62, 66-73, 103, 113.  The Court may consider these communications on a motion to dismiss to examine NextEra's exhaustion arguments.  *See Landa v. Aon Corp. Excess Benefit Plan*, 2022 WL 3594916, at *3 (S.D. Fla. Aug. 23, 2022); *Lawson v. McGee*, 2021 WL 2515683, at *2 (S.D. Fla. June 18, 2021).

[2]     Konstandt Decl., Ex. A at 18, 20; Konstandt Decl., Ex. B at page 7 of the Notes to Financial Statements.

tax accounts, a dividend payout program that enables participants to choose how their dividends on Company stock are paid (reinvestment or cash), true-up contributions, auto-enrollment in pre-tax contributions that increase each year, and the restoration of Company matching contributions if an employee leaves the Company before the contribution vested but subsequently returns. *See* Am. Compl. ¶¶ 27-28; *see also* Konstandt Decl., Ex. A at 14, 19, 30, 33-34, 79; Konstandt Decl., Ex. B at pages 7-8 of the Notes to Financial Statements. All of these distinctive features are costly for a plan sponsor to offer to its participants.

*Plan Recordkeeping*. Fidelity Investments Institutional ("Fidelity") is the Plan's recordkeeper. Am. Compl. ¶ 2. "Recordkeepers help plans track the balances of individual accounts, provide regular account statements, and offer informational and accessibility services to participants." *Hughes v. Nw. Univ.*, 595 U.S. 170, 174 (2022); *see also* Am. Compl. ¶ 90. As compensation for providing recordkeeping services, the Plan pays Fidelity a flat fee per participant annually. The plan fiduciary has continually driven down the fees for the recordkeeper's services. Prior to the start of the putative class period, the annual per participant fee was $56; by 2021, the recordkeeping fee had declined by 16% to $47 per participant. Am. Compl. ¶¶ 45, 103-04, 113.[3]

*Forfeitures*. Matching contributions vest over time. Am. Compl. ¶ 5. If a participant leaves the Company before a matching contribution is fully vested, the unvested portion is

---

[3]     Plaintiff misreads the Form 5500 regarding the Plan's per participant recordkeeping fee. By including charges for supplemental services that are beyond the scope of the base recordkeeping arrangement, Plaintiff incorrectly concludes that the per participant fee was $56 to $66 per participant. Am. Compl. ¶ 101. The "Direct Compensation" figures in the chart include (a) the flat per participant fees paid by participants, and (b) fees for such *supplemental* services as loans and other add-on services. *See* Am. Compl. ¶ 106 (code 37 for loan processing and other codes for supplemental services; DOL Form 5500 instructions at p. 29, https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/instructions-for-form-5500-annual-report.pdf).

forfeited.  *Id.* ¶¶ 5-6; *see* Konstandt Decl., Ex. A at § 5.03 (page 33).  The Plan document

includes the following instruction on how these forfeited amounts shall be allocated:

> Forfeitures shall first be applied to restore to Participants amounts previously
> forfeited pursuant to Section 5.03. Any remaining forfeitures shall be applied to
> reduce Plan administrative expenses; if none, any remaining forfeitures shall be
> used to reduce Company Contributions.

Am. Compl. ¶¶ 7, 33.

The Committee evaluated the Plan document and reasonably concluded that forfeited

contributions go first to participants returning to the Company, then are applied to reduce Plan

administrative expenses (such as balances owed by the Plan to Fidelity, and fees charged by the

Plan's other administrative service providers).  After those fees are paid, forfeitures are then

applied to reduce matching contributions from the Company.  Konstandt Decl., Ex. I at 2-3.

Exercising its discretion to interpret the Plan document (Konstandt Decl., Ex. A at

12.02(c) (page 56)), the Committee concluded that the phrase "Plan administrative expenses"

refers to expenses incurred in the administration of the Plan that are paid *by the Plan or by the*

*Company*, and not expenses paid directly by plan participants.  Konstandt Decl., Ex. I at 3.  The

Committee based this conclusion on its historical understanding of the term "Plan administrative

expenses" and the definition of "Plan Expenses" in the Plan document.  *Id.*  The Committee

observed that "Plan Expenses" in the Plan document was a defined term and referred to Plan

expenses incurred in the administration of the Plan that are paid by the Plan itself or by the

Company but omitted reference to the per participant recordkeeping fees paid directly by plan

participants.  *Id.* at 3 (citing Plan document at § 10.02 (page 49)).

***The Amended Complaint.***  Plaintiff alleges that NextEra breached its duty of prudence to

the Plan.  *First*, he avers that the Plan paid excessive compensation to Fidelity because the

"reasonable" fee for recordkeeping should be $21 per participant annually (an inexplicable

change from Plaintiff's averments in the original complaint that the reasonable fee during this same period was actually $30 per participant). *Compare* Compl. ¶¶ 32-33, 36 (ECF No. 1), *with* Am. Compl. ¶¶ 45-46, 102, 145. *Second*, Plaintiff avers that NextEra failed to follow the Plan document and misused forfeitures to the detriment of the Plan. Am. Compl. ¶ 145.

## PROCEDURAL HISTORY

Plaintiff filed his initial complaint on September 25, 2023. ECF No. 1. In the Eleventh Circuit, "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citation omitted). Upon a joint request of the parties, the Court entered an order staying the case so that Plaintiff could pursue administrative remedies available to him under the Plan. Am. Compl. ¶¶ 56-58; ECF No. 17.

*Initiation of the Administrative Process*. On October 30, 2023, Plaintiff submitted a claim to the Plan's oversight committee, which is known as the Employee Benefit Plans Administrative Committee (the "Committee"). Am Compl. ¶ 60; Konstandt Decl., Ex. C. Plaintiff alleged that NextEra breached its duty of prudence to the Plan and its participants by (1) paying excessive recordkeeping fees to Fidelity, and (2) retaining Company stock as an investment option in the Plan. *See* Konstandt Decl., Ex. C. These allegations are described below as the "Original Claim." On November 30, 2023, the Committee informed Plaintiff of the time required to render an initial decision. Am. Compl. ¶ 61; Konstandt Decl., Ex. D at 1.

*Denial of the Original Claim*. The Committee denied Plaintiff's Original Claim on April 26, 2024. Am. Compl. ¶ 66; *see* Konstandt Decl., Ex. E; ECF No. 21 at 1. In a lengthy and detailed decision, the Committee explained that the Plan employed prudent monitoring processes (such as engaging third-party consultants to review the Plan's administrative costs and benchmarking the Plan's fees to the fees paid by analogous plans in the market). Konstandt

6

Decl., Ex. E at 6.  The Committee rejected Plaintiff's claim that the recordkeeping fee was excessive due to the receipt of float earnings by Fidelity.  *Id.* at 7.  Based on its review of Plan records, the Committee concluded that float generated by uninvested cash sitting in Fidelity accounts and kept by Fidelity reduced the Plan recordkeeping fees, in accordance with the recordkeeping agreements.  *Id.*  The Committee further concluded that the Plan's Form 5500s accurately disclosed all fees paid to Fidelity.  *Id.* at 7-8.  The Committee informed Plaintiff that his deadline for requesting a review of the Committee decision was July 25, 2024.  *Id.* at 9.  The Committee also offered to provide Plaintiff "free of charge" the documents that the Committee considered in connection with its decision.  *Id.* at 10.

*Appeal of the Committee's Decision on the Original Claim (and Assertion of the Forfeiture Claim).*  Three months later, Plaintiff appealed the Committee's decision on the Original Claim.  Am. Compl. ¶ 67; Konstandt Decl., Ex. F.  Plaintiff appealed the decision denying the claim that the Plan paid excessive recordkeeping fees to Fidelity.  *Id.*  Plaintiff, for the first time, also made new allegations regarding the Plan's use of forfeited funds.  Am. Compl. ¶ 67; Konstandt Decl., Ex. F at 6.  The new allegations are described below as the "Forfeiture Claim."

The administrative process requires the review of documents and a thoughtful assessment of the claim.  The Forfeiture Claim required the Committee to conduct a new inquiry, including a review of NextEra's allocation of forfeiture dollars.  On September 23, 2024, the Committee informed Plaintiff that it would treat his forfeiture allegations as a new claim so that it could evaluate the information required to assess the claim.  Konstandt Decl., Ex. G at 2; *see* Am. Compl. ¶ 69.  The Committee explained: "Mr. Stewart's original claim, dated October 30, 2023, did not raise any issues regarding forfeitures or assert a prohibited transaction claim.

7

Accordingly, the Committee will treat the Forfeiture Claim as an initial claim." Konstandt Decl., Ex. G at 2.

NextEra submitted a report on the status of the administrative proceeding on October 9, 2024. ECF No. 22. The status report states that (1) Plaintiff "raised for the first time a claim regarding the Plan's use of forfeited amounts" on July 24, 2024, and (2) the Committee "informed Plaintiff that it intends to treat the forfeiture claim as an initial claim, that it is currently evaluating the claim, and that it will make and issue its initial decision on the claim in December 2024." *Id.* ¶¶ 3, 5. Plaintiff filed a separate status report on October 17, 2024, but did not dispute these two material facts. ECF No. 23.

***Committee Evaluation of the Original Claim on Appeal and the Forfeiture Claim***. On December 23, 2024, the Committee affirmed its decision to deny the Original Claim, and informed Plaintiff that he could file a civil action with respect to those claims. Am. Compl. ¶ 72; Konstandt Decl., Ex. H. That same day, in a separate decision, the Committee denied Plaintiff's Forfeiture Claim and further informed Plaintiff that the deadline for appeal of the Forfeiture Claim was March 23, 2025. Am. Compl. ¶ 73; Konstandt Decl., Ex. I at 5. Plaintiff did not appeal the Committee decision on the Forfeiture Claim but instead moved to lift the stay and to file his Amended Complaint. ECF No. 25. On February 15, the Court lifted the stay and instructed Plaintiff to file his Amended Complaint. ECF No. 26.

***The Amended Complaint.*** The Amended Complaint includes challenges to the Plan's recordkeeping fee (the central allegation in the Original Claim) and also to the Plan's allocation of forfeitures (the allegations newly asserted in the Forfeiture Claim). *See* Am. Compl. ¶ 145.

***Appeal of Decision on Forfeiture Claim***.  On March 12, 2025, after having represented that no appeal of the Forfeiture Claim was required (Am. Compl. ¶ 81), Plaintiff served on litigation counsel for NextEra an "Appeal of Initial Decision on Review – Forfeitures." Konstandt Decl., Ex. J.

## ARGUMENT

The Amended Complaint should be dismissed.  *First*, the Amended Complaint fails to state a claim for breach of ERISA's fiduciary duty of prudence regarding compensation paid to the recordkeeper.  *Second*, Plaintiff's revenue sharing claim should be dismissed for failure to allege that any Plan investment option made revenue share payments to the recordkeeper.  *Third*, float is not a plan asset and NextEra had no duty to monitor those amounts.  *Fourth*, Plaintiff did not exhaust—as required in this Circuit—the administrative remedies available to him under the Plan with respect to the Forfeiture Claim.  *Last*, the Committee's interpretation of the Plan's language regarding the proper allocation of forfeitures is entitled to *Firestone* deference.

I.      **THE AMENDED COMPLAINT DOES NOT ALLEGE A BREACH OF THE FIDUCIARY DUTY OF PRUDENCE REGARDING THE COMPENSATION PAID TO FIDELITY**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  In assessing the Complaint, the Court must "accept the *factual* allegations in the Complaint as true and construe them in the light most favorable" to Plaintiff.  *Turner v. Williams,* 65 F.4th 564, 577 (11th Cir. 2023) (alteration and quotation marks omitted).  However, the Court need not accept "legal conclusions" as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal. *Id.* (quoting *Iqbal,* 556 U.S. at 678).  In the Eleventh Circuit, challenges to a complaint's legal

sufficiency, raised in a dispositive motion to dismiss, "should be resolved before discovery" when possible.  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1292 (11th Cir. 2005).

### A.    Plaintiff's General Allegations That the Plan's Recordkeeping Fees Were Too High Do Not State a Claim

Plaintiff claims that NextEra breached its fiduciary duty because the Plan paid a recordkeeping fee that was greater than Plaintiff's made-up limit of $21 per participant.  This allegation is insufficient to support an inference of a breach of the duty of prudence.  The management of an ERISA-covered plan requires fiduciaries to confront "difficult tradeoffs" between Plan features (including service levels) and fees.  *Hughes*, 595 U.S. at 177.  Plan fiduciaries are not required to choose the lowest level of service or the cheapest recordkeeper, and fiduciaries are permitted to consider factors other than cost.  *See Pizarro v. Home Depot Inc.,* 111 F.4th 1165, 1176-78 (11th Cir. 2024) ("Nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund or service provider (which might, of course, be plagued by other problems)" (internal quotation omitted)).

A plan fiduciary might reasonably choose to hire the cheapest recordkeeper, accepting bare-bones services in exchange for maximum cost savings, or might reasonably choose to offer participants more robust services that come with greater cost.  *See Singh v. Deloitte LLP*, 123 F.4th 88, 94 (2d Cir. 2024) ("For just as 'the cheapest investment option is not necessarily the one a prudent fiduciary would select,' so too, a prudent fiduciary might select a higher-priced recordkeeping arrangement depending on, *inter alia*, the nature and quality of the services provided.").  For this reason, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.  When assessing their options in the marketplace for recordkeeping services, plan fiduciaries must account for the fact that operational complexity and service levels drive meaningful

differentiation in price.  *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139 (8th Cir. 2024) ("It would be like trying to compare the costs of two otherwise identical grocery baskets, except one contains filet mignon and the other does not.  We would expect the one with the steak to cost more, and the same goes for a plan that offers additional individualized services.").[4]

In challenging the fees that the Plan paid for recordkeeping services, Plaintiff relies on the bald assertion that a prudent fiduciary cannot pay for high-touch recordkeeping services if doing so would exceed his say-so limit of $21 per participant.  Am. Compl. ¶ 102.  He, thus, seeks to substitute his judgment for that of the plan fiduciary, which reasonably and prudently decided to provide participants with a broad array of services, tailored investment features, and matching contributions in the form of Company stock.  ERISA does not require plan sponsors to make the service election that Plaintiff advocates in this action.

### B.    Plaintiff Does Not Identify Meaningful Benchmarks to Support His Claim That Plan Recordkeeping Fees Were Excessive

Plaintiff seeks to bolster his claim by identifying five retirement plans that allegedly pay lower recordkeeping fees than the Plan.  Am. Compl. ¶ 133.  Here, again, the allegations are insufficient to support an inference of a breach of the fiduciary duty of prudence.  The Amended Complaint includes no allegations that the five proffered plans are comparable to the Plan, that they received the same services, or that they have the same features as the NextEra Plan.  The failure to include these allegations is fatal to the claim.  Since *Hughes*, courts have taken a "context specific" view of whether an excessive recordkeeping fee claim has been adequately

---

[4]    *Cf. Pizarro,* 111 F.4th at 1176-77 ("An ERISA fiduciary's management of an employee-benefit plan does not consist of a series of yes-or-no, up-or-down choices in a vacuum.  In any single set of circumstances, there might be—indeed, likely will be—many objectively prudent choices a fiduciary could make.  ERISA recognizes that managing an employee-benefit plan 'will implicate difficult tradeoffs' yielding a range of reasonable options.").

alleged.  Plaintiff must allege *facts* demonstrating what recordkeeping services the plan offers, the cost for those services, and that the fee for those services is too high in relation to a "meaningful benchmark"—*i.e.*, establish a "like-for-like comparison" or an "apples-to-apples" comparison.  *Singh*, 123 F.4th at 95; *Matney v. Barrick Gold of N.A.*, 80 F.4th 1136, 1148 (10th Cir. 2023).

Consideration of actual services provided to specific plans, and the costs of those services, has led courts to reject the proposition that "all mega plans receive nearly identical recordkeeping services and that any difference in services was immaterial to the price of those services."  *Probst v. Eli Lilly & Co.*, 2023 WL 1782611, at *10 (S.D. Ind. Feb. 3, 2023).  Indeed, courts have squarely rejected the claim—advanced by Plaintiff here (Am. Compl. ¶ 91)—that recordkeeping services across large retirement plans are "fungible."  *Singh*, 123 F.4th at 93.

In *Singh*, for example, the Second Circuit affirmed dismissal of an ERISA class action alleging excessive recordkeeping fees, where the plaintiffs had referred to allegedly lower fees paid by other retirement plans.  *Id.*  Those comparative allegations were insufficient to state an excessive fee claim, which requires that a plaintiff must plausibly allege that the challenged fees were excessive "relative to the services rendered."  *Id.* at 92.  Prudent fiduciaries may, within their discretion, select higher priced recordkeeping arrangements depending on the nature and quality of the services provided.  *Id.* at 94.  For these reasons, a complaint must do more than allege that a plan's recordkeeping fees exceeded those of a select number of other plans in the market.  *Id.* at 93.  Cost disparity alone does not suggest imprudence.  *Id.* at 94.

The *Singh* plaintiff, like Plaintiff here, alleged "next to nothing" about the recordkeeping services provided by the challenged plan or the comparator plans.  *Id.*  There were no allegations showing that the referenced plans constituted "apples-to-apples" comparisons—*i.e.*, specificity

as to the type and quality of services provided to those plans vis-à-vis the challenged plan. *Id.* at 98. Without such allegations, the comparator plans were not "meaningful benchmarks" that could raise an inference of imprudence. *Id.* at 96-98.

The obligation to plead facts showing that a supposedly more favorable recordkeeping arrangement is comparable to the challenged plan is the majority rule. In *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), the Sixth Circuit affirmed an order dismissing an action complaining that the CommonSpirit 401(k) plan had higher recordkeeping fees than the "industry average" because the complaint did not allege facts establishing that the services covered by the plaintiff's plan fee were "equivalent to those provided by the plans comprising" the average fee. *Id.* at 1169. The court observed that the plaintiff purported to compare the CommonSpirit fees to similarly sized plans but had alleged no facts supporting an inference that those other plans offered the same services. *Id.* Recent decisions in the Eighth and Tenth Circuits are in accord. *See Matney,* 80 F.4th at 1148-49 ("A court cannot reasonably draw an inference of imprudence simply from the allegation that a cost disparity exists; rather, the complaint must state facts to show the funds or services being compared are, indeed, comparable."); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278-79 (8th Cir. 2022) ("The key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison. … [W]e have been clear that the key to stating a plausible excessive-fee claim is to make a like-for-like comparison.").

It is the absence of any particularized allegations about comparative services between the Plan and Plaintiff's so-called comparables that precludes an inference of imprudence. *See Mateya v. Cook Grp. Inc.*, 2023 WL 4608536, at *4 (S.D. Ind. June 16, 2023) (observing that courts have "routinely rejected allegations that only compare prices, without a description of the

13

services provided"). Plaintiff's bald statement that "[t]he comparable Plans . . . received at least the same services as the Plan here" (Am. Compl. ¶ 134) is the kind of conclusory allegation that the Second, Sixth, Eighth and Tenth Circuits have soundly rejected. There are no allegations establishing that the so-called comparator plans include the bells and whistles features NextEra made available to its participants. Without such factual allegations, the Court cannot undertake the "careful, context-sensitive scrutiny" the Supreme Court mandates in evaluating ERISA claims. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).

Even a cursory review of the allegations about the comparator plans in the Amended Complaint precludes a finding that they are analogous to the NextEra Plan. The RELX plan is not alleged to include company stock, or an ESOP, or to provide for matching contributions of company stock. Without these features, it is not an "apples-to-apples" comparison. Similarly, the FirstEnergy plan is not alleged to include an ESOP, an important feature in the NextEra Plan. Although Plaintiff claims that the appropriate recordkeeping fee is $21 per participant, four of the five so-called comparator plans had recordkeeping fees in excess of that amount. Am. Compl. ¶ 133.

Plaintiff compounds his failure to plead an "apples-to-apples" comparison by suggesting that NextEra "could have secured Fidelity's recordkeeping services for between $14 to $21 per participant." Am. Compl. ¶ 139; *see id.* ¶¶ 137-38 (referring to a Fidelity stipulation in *Moitoso v. FMR*). Here, again, the Amended Complaint includes no factual allegations about the scope of services provided to the participants in the Fidelity plan. Whether the Fidelity plan has the same robust features as the NextEra Plan is left to the imagination. Numerous courts have rejected the claim that Fidelity offers lower cost recordkeeping arrangements than a plan paid for this very

14

reason.  *See Singh*, 123 F.4th at 96 (rejecting Fidelity comparison where the amended complaint failed to specify the recordkeeping services provided by Fidelity to its client, or otherwise provide sufficient context to infer that these services are comparable to the services that the recordkeeper provided in the case); *Williams v. Centene Corp.*, 2023 WL 2755544, at *5 (E.D. Mo. Mar. 31, 2023) (the *Moitoso* stipulation "does not provide a meaningful comparison" and thus "does not support an inference of imprudence").[5]

C.    **ERISA Does Not Require Plan Sponsors to Conduct RFPs, Or to Conduct RFPs at Specific Intervals, to Satisfy Their Duty of Prudence**

Plaintiff further claims that NextEra breached a duty of prudence because the plan fiduciaries did not conduct RFPs at "reasonable intervals."  Am. Compl. ¶¶ 123-26.  Plan fiduciaries are not required to undertake RFPs to meet their fiduciary obligations under ERISA. "[N]othing in ERISA requires a fiduciary to obtain competitive bids at any regular interval." *Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532, at *12 (D. Utah Apr. 21, 2022), *aff'd*, 80 F.4th 1136 (10th Cir. 2023); *see also, e.g.*, *Riley v. Olin Corp.*, 2022 WL 2208953, at *5 (E.D. Mo. June 21, 2022) ("[T]he allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation" (citation omitted)).  The "absence of competitive bidding or [an] RFP process, without more, does not support" an inference that a plan sponsor imprudently failed to control plan fees.  *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019); *see also, e.g.*, *Albert*, 47 F.4th at 579-80 ("we [have] rejected the notion that a failure to regularly solicit quotes or competitive bids from service providers breaches the duty of prudence"); *Ferguson v. Ruane*

---

[5]    *Accord Barrett*, 112 F.4th at 1139 n.2; *Mateya*, 2023 WL 4608536 at *6; *Fritton v. Taylor Corp.*, 2022 WL 17584416, at *8 (D. Minn. Dec. 12, 2022); *Johnson v. PNC Fin. Servs. Grp.*, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021); *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *6-7 (N.D. Cal. Feb. 9, 2021).

*Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019) ("ERISA does not require plan fiduciaries to obtain competitive bids from plan service providers"). "This is particularly true" where—as in this case—the plan fiduciary "regularly re-negotiated [the] fee arrangement" to lower costs for participants. *Matney*, 80 F.4th at 1156.

## II.   PLAINTIFF FAILS TO IDENTIFY A SINGLE MUTUAL FUND IN THE PLAN THAT MAKES REVENUE SHARING PAYMENTS TO THE RECORDKEEPER

Revenue sharing is a form of indirect compensation by which a mutual fund pays a portion of its expense ratio to the entity providing recordkeeping services to a plan. *See Albert*, 47 F.4th at 574; Am. Compl. ¶ 122 ("*To the extent* that a plan's investments pay . . . revenue sharing to the recordkeeper" (emphasis added)). Plaintiff claims that NextEra failed to stop the payment of "revenue sharing compensation" to Fidelity, which allegedly "added to its already excessive compensation." Am. Compl. ¶ 119. But Plaintiff identifies no mutual fund on the Plan menu that made any revenue sharing payments to the recordkeeper. Indeed, Plaintiff fails to identify a single mutual fund on the Plan menu. This fundamental pleading failure is fatal to his claim because a challenge to a revenue sharing arrangement depends on identifying that the Plan, in fact, offers mutual funds that pay revenue share to Fidelity. *Cf., e.g.*, *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (affirming dismissal of claim under Rule 8; "Although notice pleading does not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some viable legal theory"); *cf. Iqbal*, 556 U.S. at 677 (a complaint is insufficient under Rule 8 if it tenders "naked assertions devoid of further factual enhancement") (internal quotations omitted); *Boyle v. TracFone Wireless, Inc.*, 2024 WL 3691859, at *1 (11th Cir. Aug. 7, 2024) (a complaint must plead sufficient factual content to state a plausible claim for relief).

16

Even if the Court credited Plaintiff's bald allegation that there could be revenue sharing payments, indirect compensation to a recordkeeper through a revenue sharing arrangement would not constitute a breach of the fiduciary duty of prudence.  To the contrary, revenue sharing is a well-accepted form of compensation for services, and the use of revenue sharing to pay plan service providers "violates no statute or regulation." *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009).  Such arrangements are a "common and acceptable investment industry practice[] that frequently inure[s] to the benefit of ERISA plans." *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *6 (C.D. Cal. Apr. 24, 2020); *see also Matney,* 2022 WL 1186532, at *12-13 (same); *Williams*, 2023 WL 2755544, at *4; *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *10-11 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017).

III.   **THE AMENDED COMPLAINT DOES NOT ALLEGE A BREACH OF THE FIDUCIARY DUTY OF PRUDENCE BASED ON "INDIRECT COMPENSATION" PAID TO FIDELITY THROUGH FLOAT INCOME BECAUSE FLOAT IS NOT A PLAN ASSET**

Plaintiff alleges that the receipt by Fidelity of float on uninvested cash is a breach of the fiduciary duty of prudence because those dollars could have been used to offset recordkeeping fees.  Am. Compl. ¶¶ 112-13.  Float, however, is not a plan asset, and there is no fiduciary duty owed to its treatment under ERISA.  *See In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 60-63 (1st Cir. 2016) (holding float is not a plan asset and affirming dismissal of breach of fiduciary duty claims related to treatment of float income); *Espinoza v. Baker Hughes Holdings, Inc.*, LLC, 2025 WL 449439, at *18 (S.D. Tex. Feb. 10, 2025) (granting summary judgment to defendant because, *inter alia*, float is not a plan asset); *cf. Tussey v. ABB, Inc.*, 746 F.3d 327, 339-40 (8th Cir. 2014) (vacating district court judgment because float is not a plan asset).

NextEra cannot have a fiduciary duty to monitor something that is not a plan asset, and the Amended Complaint offers no reason for why it would bear such a responsibility.  *See*

17

*Espinoza*, 2025 WL 449439, at \*14-15 ("missing from Plaintiff's briefing is any discussion of why, if float is not a Plan asset, Defendant owes a fiduciary duty to Plan participants for its treatment … Plaintiff has failed to cite any authority holding that plan administrators owe fiduciary duties to assets that are not plan assets").[6]

## IV.   PLAINTIFF HAS NOT EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR THE FORFEITURE CLAIM

"The law is clear" in the Eleventh Circuit "that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Bickley*, 461 F.3d at 1328 (citations omitted). The exhaustion requirement applies with full force to appellate remedies provided by a plan. *See, e.g.*, *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1206 (11th Cir. 2003) ("Ordinarily, if a plan participant failed to take advantage of an available administrative appeal by pursuing it in compliance with a reasonable filing deadline, she has failed to exhaust her administrative remedies and that bars federal court review of her claim."); *Horton v. United of Omaha Life Ins. Co.,* 244 F. Supp. 3d 1253 (N.D. Ala. 2017) (dismissing case on exhaustion grounds for failure to meet appeal deadline in the administrative process). Plaintiff's counsel is well-aware of this requirement, as they represented the plaintiffs in a recent case that was dismissed for failure to exhaust an administrative appeal. *See Mirabal v. NCR*

---

[6]   The Amended Complaint cites an old Department of Labor ("DOL") "Field Assistance Bulletin" for the proposition that float income is compensation that must be "considered, negotiated, and monitored by ERISA fiduciaries." Am. Compl. ¶ 111. This bulletin does not have the force of law and there is no authority holding that it imposes duties on plan sponsors for claims based on breaches of fiduciary duties. *See Espinoza*, 2025 WL 449439, at \*7. Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), a DOL field bulletin is not entitled to deference, and the only federal court to consider it post *Loper Bright* has rejected it. *See Fed'n of Ams. for Consumer Choice, Inc. v. U.S. DOL,* 742 F. Supp. 3d 677, 693 (E.D. Tex. 2024) (noting the court "owes no deference to DOL's interpretation of ERISA" post-*Loper Bright*).

*Corp. Plan Admin. Comm.*, No. 22-cv-04879-SCJ, Slip Op. at *6-7 (N.D. Ga. Feb. 6, 2024), Dkt. No. 50.

Seeking to avoid dismissal for failure to exhaust administrative remedies, the Amended Complaint alleges that the Forfeiture Claim is not a new claim—it merely adds "additional facts." Am. Compl. ¶¶ 67, 73, 82. That characterization of the Original Claim that Plaintiff presented to the Committee strains credulity. Neither the original complaint nor the Original Claim include any reference to NextEra's allocation of forfeitures. *See* ECF Nos. 1 & 21, Am. Compl. ¶ 67, and Konstandt Decl., Ex. C. The Committee would have had no reason to evaluate the Plan's allocation of forfeiture dollars based on the claims contained in the Original Claim.

Moreover, if Plaintiff believed that an administrative appeal was not required for his Forfeiture Claim, he should have said so. In September 2024, NextEra informed Plaintiff that it would treat his forfeiture allegations as a new claim. *See* Konstandt Decl., Ex. G at 2; ECF No. 22 at ¶¶ 3, 5. Plaintiff did not object, and did not take a contrary position until January 2025. ECF No. 24. Plaintiff failed wholly to engage in the administrative process, forcing the Committee to investigate and consider Plaintiff's claims about the Plan without much contribution from Plaintiff.

Plaintiff further alleges that exhaustion of the Forfeiture Claim would be "futile." Am. Compl. ¶¶ 76, 80. He alternatively alleges that he was denied "meaningful access" to an administrative review process (*id.* at ¶ 76), and that the Committee failed to complete the disposition of his claim in a "timely manner" (*id.* at ¶ 77). These allegations do not satisfy the "narrow" futility exception recognized by the Eleventh Circuit. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000). The communications between Plaintiff and the Committee confirm that the administrative processes afforded by the Plan were meaningful,

19

thoughtful, and progressed in a timely manner. *See* Konstandt Decl., Exs. D-I. To the extent that there were delays in the rendering of a decision on Plaintiff's Original Claim and newly asserted Forfeiture Claim, they are attributable to Plaintiff's inexplicable decision to delay an appeal of the Original Claim by three months, and his belated pivot to assert an entirely new claim (the Forfeiture Claim) nearly nine months after making his initial submission to the Committee. *Compare* Konstandt Decl., Ex. C, *with* Konstandt Decl., Exs. F and G. Plaintiff's own dilatory tactics cannot serve as the basis for a futility claim. *See Am. Dental Ass'n v. WellPoint Health*, 494 F. App'x 43, 46 (11th Cir. 2012) ("Base allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement.") (citations omitted).

Nor should this Court conclude, as Plaintiff alleges, that the administrative process should be "deemed exhaust[ed]." Am. Compl. ¶ 77. In *Torres v. Pittston Co.*, 346 F.3d 1324, 1327 (11th Cir. 2003), cited by Plaintiff at Paragraph 77 of the Amended Complaint, the defendant failed to acknowledge the plaintiff's claims for eight months. Here, by contrast, the Committee provided timely resolution of all issues within the period set forth by the Plan and DOL regulations. *See* Konstandt Decl., Exs. D, E, and G (explaining to Plaintiff the time required to render an initial decision, the date for filing appeal under the Plan's claim procedures and the special circumstances that necessitated an extension of the period for review under DOL

20

29 C.F.R. § 2560.503-1).[7]   Having done so, Plaintiff's hollow claim that exhaustion would have been futile does not satisfy the *Torres* standard.  *See Landa*, 2022 WL 3594916, at *5-6 ("strictly" enforcing the exhaustion requirement) (quoting *Perrino*, 209 F.3d at 1315-16).

Plaintiff's conduct since seeking leave of Court to reopen this case confirms that exhaustion of administrative remedies would not have been futile.  This morning, weeks after asking the Court to reopen the case, and after filing of the Amended Complaint alleging that no appeal was required, Plaintiff provided litigation counsel with his "Appeal of Initial Decision on Review – Forfeitures."  Konstandt Decl., Ex. J.  Plaintiff, thus, seeks to have his cake and eat it too.  He alternatively informs the Court that he should be free to litigate the Forfeiture Claim in federal court and, at the same time, seeks further action by the Committee.  Plaintiff clearly has not exhausted his administrative remedies and the claims relating to the allocation of forfeitures should be dismissed.  Gamesmanship regarding his exhaustion of administrative remedies is wholly inconsistent with Eleventh Circuit law requiring plaintiffs in ERISA actions to exhaust available remedies before suing in federal court.

---

[7]   The Plan document specifies the time when a decision on a claim must be made.  *See* Konstandt Decl., Ex. A at § 12.03 (page 57).  DOL regulations require that a decision on an appeal must be made no later than the quarterly meeting immediately following receipt of the request for review (assuming it is not received within 30 days of the next-scheduled meeting), and that if special circumstances require a further extension, a decision must be reached no later than the third meeting following receipt.  29 C.F.R. § 2560.503-1(i)(ii).  The Committee met the standard specified in the Plan document and under DOL regulations, and it has sole discretion to determine when "special circumstances" necessitate an extension of the period for review.  *See, e.g.*, *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1206 (10th Cir. 2014) ("However, ERISA's regulations governing extensions of time and calculating time periods on review place with the plan administrator the sole discretion to determine whether special circumstances exist requiring an extension of time for decision.").

V.      THE COMMITTEE'S INTERPRETATION OF THE FORFEITURE
        PROCEDURES SPECIFIED IN THE PLAN DOCUMENT IS ENTITLED TO
        DEFERENCE

Even if the Court chooses to address Plaintiff's Forfeiture Claim, his allegations do not allege a breach of fiduciary duty.  Plaintiff concedes that NextEra allocated forfeitures to cover a portion of Plan administrative expenses and to reduce NextEra matching contributions.  Am. Compl. ¶¶ 35, 37-38.  These are all uses expressly authorized by the Plan document.  Am. Compl. ¶ 33; Konstandt Decl., Ex. A at § 5.05 (page 34).

Plaintiff maintains, however, that NextEra incorrectly applied the Plan's allocation methodology.  Under Plaintiff's reading of the Plan document, the direct per-participant recordkeeping fee charged to participant accounts should have been reduced by forfeitures before reducing the Company's matching contributions.  Am. Compl. ¶ 37.  The Committee, which has full discretionary authority "to construe and interpret the Plan,"[8] rejected this interpretation of the Plan document on the grounds that the "Plan administrative expenses" that could be reduced by forfeitures were expenses paid by the Plan or the Company, and not the direct per-participant recordkeeping fees charged to participant accounts.  *See* Konstandt Decl. Ex. I at 2-3, citing the Committee's historical understanding of the term and the definition of "Plan Expenses" in the Plan document (Ex. A at § 10.02 (page 49)).  The Supreme Court has held that a committee's reasonable interpretation of its plan documents is entitled to deference and should not be disturbed.  *See Firestone*, 489 U.S. at 111; *Conkright v. Frommert*, 559 U.S. 506, 509, 512 (2010) (administrator's "discretionary authority to interpret a plan is entitled to deference").  The Amended Complaint simply ignores the Committee's interpretation of the Plan document and the careful analysis that produced its interpretation.

---

[8]      Konstandt Decl., Ex. A at § 12.02(c) (page 56).

The Committee's interpretation of the Plan document was in accordance with interpretations accepted both by the Treasury Department and Congress.  Additionally, the Committee's conclusion that "Plan" administrative expenses are those borne by the Plan and not individual participant expenditures is recognized as a reasonable application of forfeitures in the Treasury Department's recently proposed regulations regarding the appropriate use of plan assets.  Indeed, the proposed regulations identify the reduction of plan administrative expenses (as opposed to participant fees which benefit participants) as the first of three available uses of forfeitures:

> Forfeitures arising in any defined contribution plan  . . . may be used for one or more of the following purposes, as specified in the plan:  (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms.

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12883 (proposed Feb. 27, 2023).

These uses are the same uses recognized by the Tax Reform Act of 1986.  *Id.*  The Conference Report accompanying the Tax Reform Act of 1986 confirmed that forfeitures in defined contribution plans may "reduce future employer contributions."  H.R. Rep. No. 99-841, Vol. II at 442 (1986).  The NextEra Committee's interpretation of the Plan document is consistent with the long-standing industry practice of allocating forfeitures to reduce Plan administrative expenses incurred by the Plan, or to reduce employer matching contributions.  *See Hutchins v. HP Inc.*, 2025 WL 404594, at *4 (N.D. Cal. Feb. 5, 2025) (dismissing breach of fiduciary duty claim based on application of forfeitures to reduce employer matching contributions because plaintiff's theory ignored "decades of settled law" and "long-standing rules" regarding the permissible use of forfeitures); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024) (referring to the "settled understanding of Congress

23

and the Treasury Department" regarding the application of forfeitures to reduce employer contributions).  The Committee's reasonable interpretation about the definition of "Plan administrative expenses," and the allocation of forfeitures, should not be disturbed because Plaintiff would like an alternative interpretation of the Plan document.  *See Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at \*3-6 (E.D. Va. Sept. 5, 2024) (dismissing breach of fiduciary duty claims where defendant followed plan provisions on application of forfeitures); *cf. Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330, at \*8-10 (D.N.J. Dec. 19, 2024) (dismissing breach of fiduciary duty claim and rejecting plaintiff theory that forfeited amounts cannot be used to reduce employer contributions).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.


Respectfully submitted,                                          Dated: March 12, 2025

**LAWSON HUCK GONZALEZ, PLLC**

*/s/ Jason Gonzalez*
Jason Gonzalez
215 S. Monroe Street, Suite 320
Tallahassee, FL 32301
(t) (850) 825-4334
jason@lawsonhuckgonzalez.com

*Counsel for Defendant*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Lori A. Martin (*pro hac vice*)
Brad E. Konstandt (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
lori.martin@wilmerhale.com
brad.konstandt@wilmerhale.com

*Counsel for Defendant*

24

25

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 12th day of March, 2025, the foregoing was

electronically filed with the Clerk of the Court via the CM/ECF system, which will send a

notice of electronic filing to the following:

Marc R. Edelman
MORGAN & MORGAN
201 N. Franklin Street, Suite 700
Tampa, FL 33602
medelman@forthepeople.com
*Counsel for Plaintiff*

Brandon J. Hill
Luis A. Cabassa
Amanda E. Heystek
WENZEL FENTON CABASSA, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
(t) (810) 337-7992
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com

/s/ *Jason Gonzalez*
Attorney

25