**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

|  |  |
|---|---|
| JOHN STEWART, on behalf of the NextEra Energy, Inc., Employee Retirement Savings Plan, | No. 9:23-CV-81314-AMC |
|       Plaintiff, | The Honorable Aileen M. Cannon |
| vs. | |
| NEXTERA ENERGY, INC., | |
|       Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND FACTS ..................................................................................... 8

     A.    Defendant is an ERISA Fiduciary ......................................................... 8

     B.    Defendant Caused the Plan to Pay Excessive Compensation to
          Fidelity................................................................................................... 8

III.   DEFENDANT'S ERISA FIDUCIARY DUTIES ...................................... 13

IV.   MOTION TO DISMISS LEGAL STANDARD.......................................... 14

V.    DEFENDANT BREACHED ITS DUTY OF PRUDENCE BY CAUSING THE
     PLAN TO PAY EXCESSIVE COMPENSATION TO FIDELITY.......................... 15

     A.    Direct Fee Compensation ..................................................................... 15

     B.    Float Compensation.............................................................................. 16

     C.    Revenue Sharing Compensation .......................................................... 17

     D.    Services Rendered ................................................................................ 18

     E.    Failure to Solicit Competitive Bids ..................................................... 19

VI.   DEFENDANT'S EXHAUSTION ARGUMENTS FAIL .......................... 20

VII.  DEFENDANT'S FORFEITURE ARGUMENTS ARE SPECIOUS ........................ 21

VIII. CONCLUSION................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                    <u>PAGE(S)</u>

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ...............................................................................5

*Angelo v. NCL Corp.*,
   No. 1-22-cv-22962 (S.D. Fla. Sept 16, 2022) ...................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................4

*Bell v. Pension Comm. of ATH Holding Company, LLC*,
   2017 WL 1091248 (S.D. Ind. March 23, 2017)................................................19

*Bilello v. Estee Lauder, Inc., et al.*,
   No. 1:20-cv-04770-JMF (S.D.N.Y. June 7, 2021).............................................2

*Blackmon v. Zachary Holdings, Inc.*,
   2021 WL 2190907 (W.D. Tex. April 22, 2021) .................................................3

*Boley v. Universal Health Serv.*, Inc.,
   498 F.Supp.3d 715 (E.D. Pa. 2020) ...................................................................3

*Braden v. Wal-Mart Stores*,
   588 F.3d 585 (8th Cir. 2009) ............................................................................15

*Cannarozzo, et al., v. The Nemours Foundation*,
   No. 3:23-cv-00136 (M.D. Fla. March 26, 2025) ...............................................1

*Coyer v. Univar Solutions USA Inc. et al.*,
   2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ....................................................2

*Davis v. Magna Int'l of America, Inc.*,
   2021 WL 1212579 (E.D. Mich. March 31, 2021) ..............................................3

*Davis v. Salesforce.com, Inc.*,
   2022 WL 1055557 (9th Cir. Apr. 8, 2022) .........................................................5

*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ..........................................................................14

*Fuller v. Suntrust Banks, Inc.*,
    744 F.3d 685 (11th Cir. 2014) ...............................................................................13

*Garcia v. Alticor, Inc.*,
    No. 1:20-cv-01078 (W.D. Mich. Aug. 9, 2021) .......................................................2

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
    No. 1:21-cv-454 (M.D.N.C. Sept. 21, 2022) ...................................................15, 19

*Gotta v. Stantec Consulting Servs.*,
    2021 WL 1986469 (D. Ariz. May 18, 2021) ............................................................3

*Hagins v. Knight-Swift*,
    No. 22-cv-01835 (D. Ariz. May 24, 2023) .............................................................16

*Henderson v. Emory Univ.*,
    252 F. Supp. 3d 1344 (N.D. Ga. 2017)....................................................................7

*Hughes v. Northwestern Univ.*,
    142 S. Ct. 737 (2022)...................................................................................... *passim*

*Hughes v. Northwestern Univ.,*
    No. 18-2569 (7th Cir. March 23, 2023) .......................................................... *passim*

*Huang, et al. v. TriNet HR III, Inc., et al.*,
    2022 WL 93571 (M.D. Fla. Jan. 10, 2022)..........................................................1, 2

*In re Biogen ERISA Litig.*,
    2021 WL 3116331 (D. Mass. July 22, 2021)...........................................................3

*In re Omnicom ERISA Litig.*,
    2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021)...........................................................2

*In re Prime Healthcare ERISA Litig.*,
    2021 WL 3076649 (C.D. Cal. July 16, 2021)......................................................3, 7

*In re Quest Diagnostics Inc. ERISA Litig.*,
    2021 WL 1783274 (D.N.J. May 4, 2021)................................................................3

*In re Sutter Health ERISA Litig.*,
    No. 20-cv-01007 (E.D. Cal. Feb. 9, 2023)..............................................................6

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
    510 U.S. 86 (1993)...................................................................................................7

iii

*Johnson v. Duke Energy Corp.*,
  No. 20-cv-00528 (W.D.N.C. Mar. 4, 2021)...........................................................................15

*Khan v. PTC, Inc.*,
  No. 20-cv-11710 (D. Mass. April 6, 2021)...............................................................................2

*Kong v. Trader Joe's Co.*,
  2022 WL 1125667 (9th Cir. Apr. 15, 2022) .............................................................................5

*Lopez v. Embry-Riddle Aeronautical Univ., Inc.,*
  No. 22-cv-1580 (M.D. Fla. July 12, 2023) ...............................................................................1

*Matney v. Barrick Gold of N. Am., Inc.,*
  No. 20-cv-275 (D. Utah 21, 2022) ...........................................................................................6

*Mazza v. Pactiv Evergreen Servs,*
  No. 22-cv-5052 (N.D. Ill. May 18, 2023) .................................................................................6

*McCool v. AHS Management Company, Inc.*,
  2021 WL 826756 (M.D. Tenn. March 4, 2021) ........................................................................2

*McManus v. Clorox Co.*,
  2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ............................................................................24

*McDonald v. Laboratory Corp. of Amer. Holdings,*
  No. 1:22-cv-680 (M.D.N.C. July 28, 2023).............................................................................19

*McGowan v. Barnabas Health, Inc.*,
  2021 WL 1399870 (D.N.J. April 13, 2021)...............................................................................3

*McNeilly v. Spectrum Health Sys.*,
  No. 1:20-cv-00870 (W.D. Mich. July 16, 2021) ...............................................................13, 19

*Moitoso et al. v. FMR,*
  451 F. Supp. 3d 189 (D. Mass. 2020) .......................................................................................9

*Molla v. Gerdau Ameristeel US, Inc.*,
  No. 8:22-cv-02094 (M.D. Fla., Sept. 9, 2022)......................................................................3, 4

*Nunez v. B. Braun Medical, Inc.*,
  No. 20-cv-04195-EGS (E.D. Pa. June 4, 2021).........................................................................2

*Parmer, et al. v. Land O'Lakes, Inc., et al.*,
  2021 WL 464382 (D. Minn. Feb 9, 2021) .................................................................................3

iv

*Peck v. Munson Healthcare et al.*,
   2022 WL 17260807 (W.D. Mich. Nov. 9, 2022).................................................................2

*Perez-Cruet v. Qualcomm, Inc.*,
   2024 WL 2702207 (S.D. Cal. May 24, 2024)..................................................................24

*Peterson, et al. v. Insurance Offices, Inc., et al.*,
   2021 WL 1382168 (D.N.J. April 13, 2021).......................................................................2

*Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*,
   2020 WL 1531870 (E.D. Pa. Mar. 31, 2020).....................................................................2

*Pizarro v. Home Depot*,
   111 F.4th 1165 (11th Cir. 2024) .......................................................................................2

*Pizarro v. The Home Depot, Inc.*,
   No. 1:18-cv-01566-WMR (N.D. Ga. Sept. 20, 2019)........................................................2

*Pledger v. Reliance Trust Co.*,
   240 F. Supp. 3d 1314 (N.D. Ga. 2017) .............................................................................1

*Probst v. Eli Lily & Co.*,
   No. 1:22-cv-01106 (S.D. Ind. Feb. 3, 2023) .....................................................................5

*Rodriguez v. Intuit, Inc.*,
   744 F.Supp.3d 935 (N.D. Cal. August)............................................................................24

*Santiago v. University of Miami*,
   2021 WL 1165441 (S.D. Fla. March 26, 2021) .................................................................1

*Seidner v. Kimberly-Clark Corp.*,
   No. 3:21-cv-867 (N.D. Tex., March 30, 2023) ...............................................................18

*Short v. Brown Univ.*,
   320 F. Supp. 3d  363 (D.R.I. 2018) ...........................................................................15, 19

*Silva v. Evonik Corp.*,
   2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) ...................................................3

*Smith v. Shoe Show, Inc.*,
   No. 1:20-cv-813 (M.D. N.C. Feb. 25, 2022) ..................................................................19

*Stengl v. L3Harris Techs*,
   No. 6:22-cv-572 (M.D. Fla. Mar. 2, 2023) ...................................................................1, 6

*Tatum v. RJR Pension Inv. Committee*,
    761 F.3d 346 (4th Cir. 2014) .................................................................................14

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015)..................................................................................................4, 14

*Tibble v. Edison Int'l.*,
    843 F.3d 1187 (9th Cir. 2016) .............................................................................14

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ...............................................................................17

*Wehner v. Genetech, Inc.*,
    No. 20-cv-06894 (N.D. Cal. Feb. 9, 2021) .......................................................6

## I.      INTRODUCTION

NextEra Energy, Inc. ("Defendant") makes many of the <u>exact</u> same arguments in its Motion to Dismiss ("Motion") that have been repeatedly rejected by this Court and other District Courts in the Eleventh Circuit. *See Santiago v. Univ. of Miami*, Case No. 1:20-cv-21784 (S.D. Fla. Mar. 1, 2021)[1] (denying motion to dismiss ERISA breach of fiduciary duty of prudence claim); *Huang v. Trinet Hr III, Inc.*, 8:20-cv-2293-VMC-TGW (M.D. Fla. Jan. 10, 2022) (same); *Stengl v. L3Harris Techs*, 6:22-cv-572-PGB-LHP (M.D. Fla. Mar. 2, 2023)[2] (same); *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, 6:22-cv-1580-PGB-LHP (M.D. Fla. July 12, 2023) (same); *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344 (N.D. Ga. 2017)[3] (same); *Pledger v. Reliance Trust Co.*, 240 F. Supp. 3d 1314 (N.D. Ga. 2017)[4] (same); *Goodman v. Columbus Reg'l Healthcare Sys.,* Case No. 4:21-15 (CDL) (M.D. Ga. Jan. 25, 2022)[5] (same); *Cannarozzo, et al., v. The Nemours Foundation*, 3:23-cv-00136 (M.D Fla. March 26, 2025) (same). Defendant did not cite or discuss any of these opinions. That is because application of these opinions to the well-pleaded facts in Plaintiff's Amended Complaint ("Complaint") unquestionably support denial of Defendant's Motion. This Court should follow the opinions and analysis in *Santiago*, *Huang*, *Lopez*, *Henderson*, *Pledger*, *Goodman*, and *Cannarozzo* and deny Defendant's Motion.

A careful reading of Defendant's Motion reveals that Defendant fails to provide the Court

---

[1] After the motion to dismiss in *Santiago* was denied, Judge Darrin P. Gayles approved a $1.85 million class settlement.

[2] After the motion to dismiss in *Stengl* was denied, Judge Paul G. Byron approved a $650,000 class settlement.

[3] After the motion to dismiss in *Emory* was denied, Judge Charles A. Pannell, Jr. approved a $16.8 million class settlement.

[4] After the motion to dismiss in *Pledger* was denied, Judge Mark H. Cohen approved a $40 million class settlement.

[5] After the motion to dismiss in *Goodman* was denied, Judge Clay D. Land approved a $2 million class settlement.

with any opinions from within this District or within the Eleventh Circuit that support the arguments Defendant makes relating to operative pleading standards for ERISA breach of fiduciary duty claims. Defendant instead relies on a hodge-podge of mostly unpublished opinions from elsewhere that are outliers and factually and legally distinguishable, and in some instances inapposite. For example, Defendant cites to *Pizarro v. Home Depot*, 111 F.4th 1165 (11th Cir. 2024) for the point that ERISA plan fiduciaries are not "required to scour the market to find the lowest level of service or the cheapest recordkeeper." (Motion at 10.) But Plaintiff's Complaint does not allege Defendant was "required to scour the market to find the lowest level of service or the cheapest recordkeeper." So, *Pizzaro* is factually distinguishable. More importantly, in *Pizzaro* the court denied the motion to dismiss. The defendant in *Pizzaro* made the same arguments as Defendant makes here. The Honorable Judge William M. Ray, II presided over *Pizarro* and he entered an order analyzing and rejecting the same arguments Defendant makes here. *See Pizarro v. The Home Depot, Inc.*, No. 1:18-cv-01566-WMR (N.D. Ga. Sept. 20, 2019) (ECF No. 74). Thus, *Pizarro* is inapposite and is authority for denying Defendant's Motion.

Outside of the Eleventh Circuit legions of federal courts have denied motions to dismiss nearly identical to the Motion filed by Defendant here. *See e.g., Peck v. Munson Healthcare et al.*, 2022 WL 17260807 (W.D. Mich. Nov. 9, 2022) (denying motion to dismiss ERISA breach of fiduciary duty of prudence claim); *Coyer v. Univar Solutions USA Inc. et al.*, 2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Garcia v. Alticor, Inc.*, No. 1:20-cv-01078-PLM-PJG (W.D. Mich. Aug. 9, 2021) (same); *In re Omnicom ERISA Litig.*, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021 Mich. July 16, 2021) (same); *Khan v. PTC, Inc.*, No. 1:20-cv-11710-WGY (D. Mass. April 6, 2021) (same); *Bilello v. Estee Lauder, Inc., et al*., No. 1:20-cv-04770-JMF (S.D.N.Y., June 7, 2021) (same); *Nunez v. B. Braun*

*Medical, Inc.*, No. 5:20-cv-04195-EGS (E.D. Pa. June 4, 2021) (same); *In re Quest Diagnostics Inc. ERISA Litig.*, 2021 WL 1783274 (D.N.J. May 4, 2021) (same); *Blackmon v. Zachary Holdings, Inc.*, 2021 WL 2190907 (W.D. Tex. April 22, 2021) (same); *Peterson, et al. v. Insurance Offices, Inc., et al.*, 2021 WL 1382168 (D.N.J. April 13, 2021) (same); *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870 (D.N.J. April 13, 2021) (same); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *Silva v. Evonik Corp.*, 2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D. Pa. Mar. 31, 2020) (same); *Boley v. Universal Health Serv., Inc.*, 498 F.Supp.3d 715 (E.D. Pa. 2020) (same); *Gotta v. Stantec Consulting Servs.*, No. CV-20-01865-PHX-GMS (D. Ariz. May 18, 2021) (same); *In re Biogen ERISA Litig.*, 2021 WL 3116331 (D. Mass. July 22, 2021) (same); *In re Prime Healthcare ERISA Litig.*, 2021 WL 3076649 (C.D. Cal. July 16, 2021) (same); *McNeilly v. Spectrum Health Sys.*, No. 1:20-cv-00870-PLM-PJG  (W.D. Mich. July 16, 2021).

It gets worse for Defendant. Plaintiff's Complaint makes similar allegations to the complaint filed in *Angelo v. NCL Corp.,* 1-22-CV-22962-AHS (S.D. Fla. Sept 16, 2022) (ECF No 1.) Plaintiff's counsel here also represented plaintiff in *Angelo.* The defendant in *Angelo* made many of the identical arguments in a motion to dismiss filed in that case as Defendant here makes. After the motion to dismiss in *Angelo* was fully briefed, but before a ruling was made, defendant agreed to a $615,000 class settlement, which was approved as fair, reasonable, and adequate by Judge Raag Singhal on February 16, 2024. By way of another example, Plaintiff's counsel here also represents the plaintiff in *Molla v. Gerdau Ameristeel US, Inc.*, 8:22-cv-02094-VMC-SPF (M.D. Fla., Sept. 9, 2022). The defendant in *Molla* filed a motion for a protective order and a motion to dismiss making many of the same arguments as Defendant here, but the defendant in *Molla* agreed to a $1.5 million class

settlement before its motion to dismiss was decided. The Honorable Virginia Covington granted preliminary approval of the class settlement in *Molla* and scheduled a final fairness hearing on July 8, 2025. (*Id.* at ECF No. 91.) These two examples, from within the Eleventh Circuit, show that not only are Plaintiff's claims here sufficient to survive a motion to dismiss, but also that they have strong merit.

Notably, Defendant's arguments have been rejected by the United States Supreme Court in *Hughes v. Northwestern Univ.*, 142 S. 737 (2022). The complaint in *Hughes* was similar to the operative Complaint here. The complaint in *Hughes* was initially dismissed for failing to satisfy pleading standards. The arguments Defendant offers in its Motion regurgitate many of the same arguments made in the initial *Hughes* motion to dismiss about "benchmarks," "services," etc. After the district court granted the motion to dismiss in *Hughes*, the Seventh Circuit upheld the dismissal, then plaintiffs appealed to the United States Supreme Court. In a unanimous 8-0 opinion authored by Justice Sotomayor, the Supreme Court vacated the dismissal order.

The express pleading standard in ERISA cases like this one established by the Supreme Court in *Hughes* looks only to whether plaintiffs have "plausibly alleged a violation of the duty of prudence as articulated in *Tibble v. Edison Int'l*, 575 U.S. 523 (2015), applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Hughes*, 142 S. Ct. at 742. The *Hughes* opinion does not contain any of the convoluted or elevated pleading standards that Defendant asks this Court to apply with respect to "benchmarks," "services," "mutual funds" and the like. On remand from the United States Supreme Court, the Seventh Circuit, applying the Supreme Court's instructions in *Hughes* found that the plaintiff in the *Hughes* case adequately stated a claim for breach of ERISA's duty of prudence by alleging the fiduciary in that case caused the plan participants to pay excessive compensation to the plan's recordkeeper. *See*

*Hughes v. Northwestern Univ.,* Case No. 18-2569 at * 27 (7th Cir. March 23, 2023). Plaintiff alleges the same here.

Since *Hughes*, in materially identical cases, federal courts across the country have reversed dismissal orders premised on the (wrong) pleading standard Defendant asks this Court to apply here. For example, two different panels of the Ninth Circuit have post-*Hughes* summarily reversed district court dismissals of similar ERISA cases. *See Kong v. Trader Joe's Co.*, 2022 WL 1125667 (9th Cir. Apr. 15, 2022); *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022). Defendant does not cite these opinions either. They doom Defendant's Motion too.

Also of note, in its remand decision, the Seventh Circuit explained that its decision in *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022), predated the Supreme Court's decision in *Hughes* and the Seventh Circuit cast doubt on *Albert* by stating:

> [F]iduciaries who fail to monitor the reasonableness of plan fees and fail to take action to mitigate excessive fees-such as by adjusting fee arrangements, soliciting bids, consolidating recordkeepers, negotiating for rebates with existing recordkeepers, or other means-may violate their duty of prudence.

*Hughes v. Northwestern Univ.,* No. 18-2569 at * 12 (7th Cir. March 23, 2023). The *Hughes* remand opinion and correction of *Albert* is critical because Defendant cites *Albert* in its Motion on three separate occasions. And the points of law in *Albert* that Defendant wants this Court to rely on are no longer good law – not even in the Seventh Circuit – much less here in the Eleventh Circuit.

Defendant also relies on *Probst v. Eli Lily & Co.,* No. 1:22-cv-01106-JMS-MKK (S.D. Ind. Feb. 3, 2023). The unpublished out-of-Circuit *Propst* opinion was authored before the Seventh Circuit's remand decision casting doubt on *Albert,* and the *Propst* opinion was specifically premised on *Albert*. To be sure, the *Probst* Court stated, "The Court looks to *Albert* in determining whether Ms. Probst has sufficiently alleged a breach of duty of prudence claim." *Id.* at *19. Even District Courts in the Seventh Circuit post-*Hughes* confronted with <u>identical</u> arguments that Defendant makes here

distinguish *Albert* and *Probst* and deny motions to dismiss that rely on the antiquated analysis in those opinions. *See Mazza v. Pactiv Evergreen Servs,* 22 C 5052, 2023 WL 3558156 (N.D. Ill. May 18, 2023) (denying motion to dismiss ERISA prudence claims). The *Mazza* opinion is especially instructive because the defendant in that case made the same arguments Defendant makes and the *Mazza* Court eloquently explained why post-*Hughes* those arguments lack merit. Defendant does not cite the *Mazza* opinion either.

Defendant relies heavily on *Matney v. Barrick Gold of N. Am., Inc*., No.2:20-CV-275-TC-CMR (D. Utah 21, 2022) and *Matney v. Barrick Gold of N. Am., Inc*., 80 F.4th 1136 (10th Cir. 2023). Both *Matney* cases are outliers. Neither of them are binding here. And both of those opinions have been soundly criticized by federal judges, including in the Eleventh Circuit. *See Stengl v. L3Harris Techs,* 6:22-cv-572-PGB-LHP (M.D. Fla. Mar. 2, 2023) (Judge Paul G. Byron denying a motion to dismiss and stating: "the Court here summarily disagrees with many of the conclusions of the *Barrick Gold* court"); *see also Brookins v. Northeastern Univ.,* 731 F. Supp. 3d 112, 118 (D. Mass. April, 17, 2024) (rejecting *Barrick Gold* and holding "evaluating the suitability of benchmarks is 'inappropriate at the motion to dismiss stage.' To engage in meaningful benchmark analysis, this Court would be required to consider the merits substantively in a manner that would conflict with the Court's obligation to draw all reasonable inferences in favor of the plaintiff.") (internal citations omitted).

Defendant also relies on the unpublished opinion in *Wehner v. Genetech, Inc.*, Case No. 20-cv-06894-WHO (N.D. Cal. Feb. 9, 2021) for the point of law that the Court is required to resolve factual disputes about "benchmarks" at the pleading stage. But, again, *Wehner* predates *Hughes*. Courts in the Ninth Circuit post-*Hughes* have distinguished *Wehner* and found *Wehner* is no longer good law and that a plaintiff satisfies the pleading standard by alleging facts that the plan's fees and total cost were excessive – just like Plaintiff does here. *See In re Sutter Health ERISA Litig*., 1:20-cv-

01007-JLT, at *18 (E.D. Cal. Feb. 9, 2023) (holding post-*Hughes* courts "need not address" benchmarks and comparisons "at the motion to dismiss stage"); *see also In re Prime Healthcare ERISA Litig.,* 8:20-cv-01529, 2021 WL 3076649, at *7 (C.D. Cal. July 16, 2021) (finding "Defendants' reliance on *Wehner v. Genetech, Inc.* is misplaced" and holding disputes concerning benchmarks are "better resolved at summary judgment.")

Defendant also invites the Court to disregard the entire Congressional intent of ERSIA, which is to protect employee retirement savings. *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993) (noting ERISA's "broadly protective purposes"). Instead, Defendant argues that the Court ought to apply unreasonable pleading requirements that would make it virtually impossible for retirement plan participants to bring ERISA claims against imprudent fiduciaries. This is exactly what *Hughes* prohibits.

Defendant's Motion is also fatally flawed because it is premised almost entirely on disputed questions of material facts. Defendant is asking the Court to make factual determinations about benchmarks, range of services, disclosures, revenue sharing calculations, discretion, reasonableness, prudence, and an array of other disputed facts, and to decide those disputed facts in Defendant's favor based only on Defendant's arguments – not even a declaration, affidavit, or any other ostensible evidence. This shopworn tactic has been repeatedly rejected by judges across the country in similar actions – including in this Circuit by Judge Charles A. Pannell, Jr., when denying a similar motion to dismiss ERISA claims he lamented, "the defendants continue to argue issues of fact at the motion to dismiss stage instead of showing that plaintiffs failed to state a claim." *Henderson*, 252 F. Supp. 39 at 1353 (N.D. Ga. 2017).

Finally, Defendant ignores the actual claim in Plaintiff's Complaint. In what appears to be a bit of skullduggery, Defendant asks the Court to dismiss Plaintiff's "forfeiture claim" for failure to

exhaust administrative remedies. However, Plaintiff's Complaint does not contain a "forfeiture claim." The Complaint contains only a single claim for breach of ERISA's duty of prudence. Defendant is asking the Court to dismiss a claim that does not exist. In this regard, Defendant's Motion is premised on a non-sequitur. It should be denied for this reason too.

In summary, Defendant's Motion is premised on bad law, bad facts, disputed facts, and a non-sequitur. Plaintiff's 37-page Complaint is freighted with facts that when taken as true show Defendant violated ERISA's duty prudence and caused millions of dollars in lost retirement savings to Plan participants. Plaintiff also alleges that such losses will continue unless this case moves forward. That is all that is required at this stage. The Court should deny Defendant's Motion accordingly.

## II.     BACKGROUND FACTS

### A.     Defendant is an ERISA Fiduciary

Plaintiff is a current participant in the Plan. (Complaint ¶¶ 41-42.) The Plan is established and maintained under written documents in accordance with ERISA. (*Id.* ¶ 22.) As of December 31, 2023, the Plan had more than $5 billion in assets and 20,961 participants with account balances. (*Id.* ¶ 24.) Defendant is an ERISA statutory fiduciary to the Plan. (*Id.* ¶ 54.)

### B.     Defendant Caused the Plan to Pay Excessive Compensation to Fidelity

Defendant breached its duty to prudently administer the Plan and defray reasonable costs of administering the Plan by causing the Plan to pay unreasonable and excessive compensation to the Plan's recordkeeper – Fidelity. (*Id.* ¶ 25.) The Complaint alleges ERISA prudent fiduciaries implement three related processes to manage and control a plan's administrative costs. (*Id.* ¶ 121.) First, fiduciaries must closely monitor the fees being paid by the plan. (*Id.*) Second, they must identify all fees being paid by the plan, including "direct" and "indirect" compensation. (*Id.* ¶ 122.) Third, they must remain informed about overall trends in the marketplace regarding the fees being paid by

similar plans, as well as the rates that are available in the marketplace. (*Id.* ¶ 123.) These are common sense and industry accepted standards for fiduciaries of a billion-dollar retirement plan. (*Id.*)

Plans similar to the Plan here pay no more than $21 total per year per participant for all general administrative fees. (*Id.* ¶ 102.) The Complaint alleges Fidelity was recently sued by its own retirement plan for charging its own plan excessive administrative fees. In that case, the "parties [] stipulated that if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from $14-$21 per person per year and that the recordkeeping services provided by Fidelity to this Plan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper." (*Id.* ¶¶ 137-139); *see also Moitoso v. FMR*, 451 F. Supp. 3d 189, 214 (D. Mass. 2020) (same).

Even though Fidelity signed a sworn declaration in another federal court proceeding stating the total value of its services for a retirement plan of the size of the Plan here ought to be no more than $14-$21 per person per year, the Plan's annual fee disclosure states that Fidelity receives <u>direct</u> compensation of $55-$66 per person in the Plan per year. (Complaint ¶ 101.) That means, Defendant's own documents coupled with Fidelity's sworn statements in federal court show that Fidelity's <u>direct</u> compensation (alone) from the Plan is more than triple (in some years) what Fidelity's <u>total</u> compensation ought to have been. (*Id.*) As such, the Complaint alleges and contains admissions from Defendant and Fidelity that Defendant caused the Plan to pay excessive and unreasonable compensation to Fidelity to the tune of several million dollars during the limitations period. This is imprudent waste. This is enough – standing alone – to plausibly allege a breach of ERISA's fiduciary duty of prudence.

But Defendant also imprudently allows Fidelity to collect from the Plan <u>indirect</u> compensation as well. As alleged in the Complaint, Fidelity receives compensation via "float" on Plan participant

money too. (*Id.* ¶ 107-110.) Defendant agreed that anytime Plan participants deposit or withdraw money from their individual accounts in the Plan that the money will first pass through a Fidelity clearing account. (*Id.*) Plan participant money typically sits in Fidelity's clearing account for at least 2 to 3 days. (*Id.*) Defendant also agreed Fidelity could keep the investment returns and/or any interest earned on Plan participant money while the money is in Fidelity's clearing account. (*Id.*) This is a form of indirect compensation that Fidelity receives as the recordkeeper for the Plan. (*Id.*) The Plan's Annual Form 5500s for the six years preceding 2023 show that hundreds of millions of dollars were transferred in and out of the Plan every year. (*Id.*) Defendant has not tracked, monitored, nor negotiated the amount of compensation Fidelity receives from the return it earns on Plan participant money while the money is in Fidelity's clearing account. (*Id.*) Thus, Fidelity earns millions of dollars in unaccounted for <u>indirect</u> float compensation too. This is in addition to Fidelity's <u>direct</u> compensation – which was already excessive.

The Department of Labor has provided clear and unequivocal guidance that instructs it is a breach of ERISA's statutory duties for a fiduciary to allow a recordkeeper to receive indirect compensation from a retirement plan via float unless the float compensation is understood, tracked, monitored, negoatied, and factored into the total amount of compensation a recordkeeper recevies from a plan. (*See* Department of Labor, Field Assistance Bulletin No. 2002-03, dated November 5, 2002, available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-ulletins/2002-03, last visited on August 18, 2023.)

The Complaint alleges Defendant failed to satisfy any of its obligations regarding compensation paid to Fidelity via float. (Complaint ¶ 110.) The failure does not require comparisons to other plans, benchmarking, or any other abstract allegations. The failure is waste and caused the Plan millions in losses. (*Id.*)

Defendant does not deny the allegations. Defendant offers no alternative explanation. Defendant simply argues float is not a plan asset. That is not the point. Float is recordkeeper compensation. That is beyond dispute. And Defendant has a duty to monitor and control recordkeeper compensation. That is beyond dispute too. Defendant is asking the Court to dismiss well pled allegations that Defendant imprudently caused the Plan to pay millions of dollars of indirect compensation to Fidelity via float income, in rank violation of Department of Labor instructions, and common sense fiduciary practices, without even meaningfully addressing the allegations. The Motion ought to be denied for this reason too.

The Complaint further alleges Defendant allowed Fidelity to receive even more <u>indirect</u> compensation from the Plan via revenue sharing. (*Id.* ¶¶ 114-119.) In a revenue sharing arrangement, the amount of compensation for recordkeeping services that a recordkeeper pockets from a retirement plan is not based on the actual value of services it provides to a plan. (*Id.*) Instead, compensation is based on the amount of assets in the plan. (*Id.*) Typically, the recordkeeper will agree to a fee tethered to the amount of assets in a plan. (*Id.*) The fees will grow to unreasonable levels if plan assets grow while the number of participants, and thus the services provided, does not increase at a similar rate. (*Id.*)

By way of example, if a recordkeeper contracts to receive one percent annually of assets in the plan for a plan with 10,000 participants and $250,000 in assets, the recordkeeper would receive $2,500 per year in compensation, or $25.00 on a per plan participant basis. (*Id.*) But if the plan assets increased to $250,000,000 – and the contract remains the same, the recordkeeper receives $2,500,000 per year in compensation, or $25,000 per plan participant, simply because Plan assets increased. (*Id.*) This would be an excessive fee by any measure.

11

Revenue sharing, while not a *per se* violation of ERISA, can lead to massively excessive fees if not properly understood, monitored, and capped. (*Id.* ¶¶ 114-128.) If a fiduciary decides to use revenue sharing to pay for recordkeeping, it is required that the fiduciary (1) determine and monitor the amount of the revenue sharing and any other sources of compensation that the recordkeeper has received, (2) compare that amount to the price that would be available on a flat per-participant basis, or other fee models that are being used in the marketplace, and (3) ensure the plan pays a reasonable amount of compensation to the recordkeeper. (*Id.*) Defendant here imprudently failed to monitor and control the compensation that Fidelity received via revenue sharing too. This imprudence enabled Fidelity pocket millions of additional excessive <u>indirect</u> compensation from Plan participants during the limitations period. (*Id.*)

Again, Defendant does not deny that it has allowed Fidelity to receive indirect compensation via revenue sharing. Nor could it reasonably do so. For years, Defendant has been admitting, under penalty of perjury, in the Plan's annual Form 5500 disclosure documents filed with the federal government that Fidelity receives <u>direct</u> and <u>indirect</u> compensation. (*Id.* ¶ 106.) Instead, Defendant argues only Plaintiff has not alleged which investments on the Plan's menu make revenue sharing payments (a source of indirect compensation) to Fidelity. (Motion at 16.) This is a red herring. There is no requirement that Plaintiff provide what is tantamount to an expert report about revenue sharing payments in a pleading. Defendant does not provide authority from any court in any jurisdiction that even suggests such a heightened pleading requirement exists in ERISA breach of fiduciary duty actions. Moreover, this is information that Defendant, the fiduciary of the Plan, should already have and is not generally disclosed to Plan participants.

The Complaint also contains detailed allegations about the services Fidelity provides to the Plan here. (*Id.* ¶¶ 90-93; 129-131.) The Complaint contains five comparable retirement plans, three

of whom Fidelity acts as the recordkeeper. These comparators are not even required at the pleading stage post-*Hughes*, but Plaintiff provided them, and they show that the Plan here pays Fidelity far more for the same services than the comparable plans pay to Fidelity and other recordkeepers. (*Id.*) And of course, most tellingly, Fidelity itself admitted in federal court that the value of its highest quality level of services for a plan about the size of the Plan here ought to be no more than $14-21 per person per year. (*Id.* ¶¶ 137-138.) And the Complaint alleges Defendant caused the Plan to pay Fidelity millions of dollars more than what Fidelity swore in federal court what reasonable amount of compensation ought to be here. (*Id.* ¶ 146.)

The parties agree that Plaintiff initiated the administrative exhaustion process for the sole claim at issue on October 30, 2023 – over a year ago. (*Id.* ¶ 59.) Plaintiff's Complaint pleads details of the exhaustion process, including how Defendant wrongly delayed the exhaustion process. (*Id.* ¶¶ 55-82.) The parties agree that Plaintiff exhausted all administrative remedies relating to his sole claim against Defendant for breach of ERISA's duty of prudence. Plaintiff included additional <u>facts</u> in his Amended Complaint in support of his sole breach of fiduciary duty claim. Defendant wrongly argues the <u>facts</u> are an additional claim. The argument is absurd and would lead to absurd results. The Court should reject it. The Eleventh Circuit does not require exhaustion of administrative remedies pertaining to every fact discovered in support of a claim. This is what Defendant argues. If that were the standard, claims for breach of fiduciary duty would never be resolved in a timely manner.

## III.    DEFENDANT'S ERISA FIDUCIARY DUTIES

ERISA fiduciaries are held to a standard that is described as the "highest known to the law." *Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014) *abrogated on other grounds,* 135 S. Ct. 1823 (2015) (citation omitted). The ERISA duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B). ERISA's duty of prudence is not that of a prudent layperson, but rather that of a prudent fiduciary with experience dealing with a similar enterprise. *Tatum v. RJR Pension Inv. Committee*, 761 F.3d 346, 355 (4th Cir. 2014). Here, the prudence standard is high because the Plan has more than $5 billion of retirement savings. The standard is how a prudent fiduciary experienced with protecting and growing $5 billion of retirement savings would act. Subjective "[g]ood faith does not provide a defense" to imprudence because "a pure heart and empty head are not enough." *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983), *cert. denied*, 104 S. Ct. 3533 (1984).

ERISA fiduciary duties of prudence are especially important in the context of expenses paid by retirement plan participants. Over time, even small differences in expenses can significantly reduce the value of an account in a retirement plan. Those "subject to higher [expenses] … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1190 (9th Cir. 2016) (*en banc*). An ERISA fiduciary breaches its duty of prudence when it wastes plan assets or causes unnecessary losses to the plan. *Tibble*, 575 U.S. at 523; *see also* 29 U.S.C. § 1104(a)(1)(A)(an ERSIA "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of (i) providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan.")

## IV.    MOTION TO DISMISS LEGAL STANDARD

Dismissal of fact-intensive ERISA claims "is often inappropriate" at the pleadings stage. *Short v. Brown Univ.,* F. Supp. 3d  363, 368 (D.R.I. 2018) (noting "record development – and particularly

input from those with [ERISA] expertise … is essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context.") Courts recognize that in the "practical context of ERISA litigation," the details of fiduciary decision-making "tend systemically to be in the sole possession of defendants." *Braden v. Wal-Mart Stores,* 588 F.3d 585, 594 (8th Cir. 2009). "[N]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences … if plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendant, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Id. See also Johnson v. Duke Energy Corp.,* 3:20-cv-00528-RJC-DSC at *5 (W.D.N.C. Mar. 4, 2021) (denying motion to dismiss); *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, No. 1:21-cv-454, 2022 WL 4368188 (M.D.N.C. Sept. 21, 2022)  (same).

## V.   DEFENDANT BREACHED ITS DUTY OF PRUDENCE BY CAUSING THE PLAN TO PAY EXCESSIVE COMPENSATION TO FIDELITY

### A.   Direct Fee Compensation

Plans similar to the Plan here pay no more than $21 per year, per participant, for all general administrative fees. (*Id.* ¶ 102.) As of December 31, 2023, the Plan had 21,879 participants with account balances. (*Id.* ¶ 101.) Thus, the Plan should have paid no more than $459,459 in 2023 to Fidelity (*e.g.*, $21 x 21,879). However, the Plan paid $1,227,162 to Fidelity in <u>direct</u> compensation (*e.g.*, $56 x 21,879) (*Id.* ¶ 101.) Just in <u>direct</u> compensation, in 2023 alone, Defendant caused the Plan to pay Fidelity more than double what a reasonable fee ought to have been under the circumstances. Just the excessive <u>direct</u> compensation equates to nearly $3 million in losses to the Plan during the limitations period. And of course, these losses will continue going forward unless Defendant takes prudent actions. These allegations alone are sufficient to state a claim.

## B.    Float Compensation

As of the year ending 2021, the Plan had nearly $7 billion of Plan participant retirement assets under management. (*Id.* ¶ 128.) The Plan's Annual Form 5500 for the year ending 2021 shows that more than $457 million was transferred into or out of the Plan in 2021. (*Id.* ¶ 109.) Plan participant money sits in Fidelity's clearing account for at least 2 to 3 days whenever Plan assets are transferred into or out of the Plan. (*Id.*)

Over the relevant time period, the excessive compensation Fidelity received from float alone totals millions of dollars. Defendant breached its fiduciary duty of prudence (and DOL guidelines) by allowing Fidelity to receive millions in compensation via float without ever disclosing the compensation to Plan participants or Defendant even attmepting to control the compensation. Of course, as the Plan's assets have increased, so has Fidelity's compensation from the Plan via float. This single source of <u>indirect</u> compensation demonstrates beyond any reasonable measure that Plaintiffs adequately state a claim against Defendant for breaching ERISA's duty of prudence. *Hagins v. Knight-Swift,* Case No. CV-22-01835-PHX-ROS (D. Ariz. May 24, 2023) (denying motion to dismiss ERISA imprudence claims of excessive compensation via float).

Defendant misrepresents what Plaintiff alleges about float. Defendant argues "Plaintiff alleges receipt by Fidelity on uninvested cash is a breach of the fiduciary duty of prudence because those dollars could have been used to offset recordkeeping fees." (Motion at 17.) That is not what Plaintiff alleges. Plaintiff alleges that the money Fidelity received from float is a source if indirect compensation Fidelity received from the Plan and it should have considered by Defendant when negotiating Fidelity's total compensation recevied from the Plan. This is common sense. This is what prudent fiduciaries for $7 billion retirements plans do. Defendant failed to do it here.

### C.      Revenue Sharing Compensation

In 2017, the Plan had approximately $4.5 billion of assets under management. The Plan had nearly $7 billion in assets under management in 2021. (Complaint ¶ 128.) Because Defendant is also causing the Plan to pay <u>indirect</u> compensation to Fidelity via revenue sharing and because the Plan's assets under management have exploded by more than <u>$2 billion</u>, so too has the <u>indirect</u> compensation Defendant has imprudently caused the Plan to pay Fidelity via revenue sharing. The number of Plan participants has only increased slightly over this time. (*Id.*) So, Fidelity's indirect compensation sky-rocketed without Fidelity providing meaningful additional services. (*Id.*) Defendant does not deny these allegations. The opposite is true. Defendant admits every year to the federal government in required disclosures, made under penalty of perjury, that it causes the Plan to pay Fidelity "indirect compensation." Indeed, Plaintiff's Complaint includes a screen shot of the 2021 disclosure. (*Id.* ¶ 106.)

As the DOL has opined, whether a particular revenue sharing arrangement complies with ERISA requires a fact-intensive inquiry because plan fiduciaries are required to ensure – on an ongoing basis – that such an arrangement does not result in unreasonable compensation. *See* DOL Advisory Opinion 2013–03A; *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (affirming district court finding of breach of fiduciary duty for failure to monitor excessive revenue sharing payments). Defendant argues only that Plaintiff's allegations about excessive revenue sharing payments are insufficient because Plaintiff does not identify any mutual funds that pay revenue sharing to Fidelity. This argument is unavailing. It is not required at the pleading stage. Defendant is in possession of this information. The information will be disclosed in discovery and analyzed by Plaintiff's expert witnesses who will present detailed expert witness reports that include the type of loss analysis that Defendant argues ought to be in a pleading.

### D.     Services Rendered

Defendant argues that Plaintiff fails to state a claim for breach of ERSIA's fiduciary duty of prudence because Plaintiff failed to allege the compensation Defendant caused the Plan to pay Fidelity was excessive in relation to the services provided to the Plan by Fidelity. This argument fails because the Complaint alleges "the compensation Fidelity received from the Plan was grossly excessive relative to the specific services Fidelity provided to the Plan." (*Id.* ¶ 130.) Further, the Complaint details the specific services Fidelity provides to the Plan. (*Id.*) The Complaint goes above and beyond what is required at the pleading stage and identifies other comparator retirement plans where Fidelity acts as the recordkeeper and provides the same services to the Plan here, as disclosed by Fidelity on those comparator plans' annual Form 5500 disclosures. (*Id.* at ¶ 133.) The Complaint alleges the compensation Defendant caused the Plan to pay Fidelity for the same services is far greater than what the comparator plans paid Fidelity. (*Id.*)

In the face of these allegations and ignoring completely that the well-pleaded accusation must be accepted as true, Defendant argues the comparator plans are not adequate benchmarks. This is an argument over facts. *See Seidner v. Kimberly-Clark Corp.*, 3:21-CV-867-L, at *14 (N.D. Tex. Mar. 30, 2023) ("other courts considering similar issues have held that the determination of the appropriate benchmark for a fund is not properly resolved at the motion to dismiss stage … a determination regarding the appropriate benchmark involves issues of fact that cannot be decided on a motion to dismiss. (citations omitted.)" Indeed, this exact argument has been rejected by scores of federal judges across the country, including just recently by Judge Paul G. Byron from the Middle District of Florida:

> Plaintiffs' allegations here are simple: they allege the Defendant Investment Committee tolerated excessively high recordkeeping fees over the time period in question relative to those charged to similarly sized plans. Defendants' rebuttal is also simple: they contend that Plaintiffs' allegations are directly undercut by the terms of the Plan's recordkeeping contract with Fidelity, the Plan's recordkeeper. The

> Court's  response is likewise simple: the facts are not properly at issue
> before the Court at this time.

*Stengl,*  at * 24, (M.D. Fla. Mar. 2, 2023).

Furthermore, Plaintiff alleges Fidelity itself has provided evidence supporting Plaintiff's claims. *See McDonald v. Laboratory Corp. of Am. Holdings*, 1:22CV680 at * 12 (M.D.N.C. July 28, 2023) (finding the Fidelity stipulation a proper benchmark at pleading stage); *see also McNeilly v. Spectrum Health System*, No. 1:20-cv-870 (W.D. Mich. July 16, 2021) (denying very similar motion to dismiss and noting that after the complaint in that case was filed, the defendant changed recordkeepers and reduced recordkeeping fees to a flat annual fee of $22.) If Defendant wants to dispute the factual underpinnings of the Plan documents or the sworn judicial admissions of Fidelity – it can do so during the course of the case – but this is not a dispute that ought to be made or decided in Defendant's favor in a motion to dismiss.

### E.    Failure to Solicit Competitive Bids

Plaintiff's Complaint also plausibly alleges that another data point showing Defendant acted imprudently was Defendant's failure to seek competitive bids for administrative services. (Complaint ¶ 141.) Defendant's failure to solicit bids, coupled with all of the other fiduciary failures identified in the Complaint, supports the inference that Defendant breached its fiduciary duty of prudence. *See Smith v. Shoe Show, Inc.,* at *10 (M.D.N.C. Feb. 25, 2022) (denying motion to dismiss and holding a "plan fiduciary's failure to reduce recordkeeping costs through negotiation or the solicitation of competing bids may in some cases breach the duty of prudence."); *Garnick*, at *13 (M.D.N.C. Sep. 21, 2022) (same); *Bell v. Pension Comm. of ATH Holding Company, LLC*, 2017 WL 1091248 at * 5 (S.D. Ind. March 23, 2017) (same); *Short v. Brown Univ.*, 320 F. Supp. 3d 363, 370 (D.R.I. July 11, 2018) (same). Defendant argues that a failure to solicit competitive bids alone is insufficient to state a claim for breach of ERISA's duty of prudence. But Defendant ignores all of the other factual

allegations in the Complaint concerning its imprudence. When the Complaint is read as a whole, it easily satisfies the applicable pleading standards.

## VI.     DEFENDANT'S EXHAUSTION ARGUMENTS FAIL

Defendant seeks dismissal based on Plaintiff's purported failure to exhaust administrative remedies under the Plan. This argument fails for multiple reasons.

First, it ought to be undisputed that Plaintiff completed the administrative remedies exhaustion process. Indeed, Plaintiff filed an Unopposed Motion to Lift Stay and to File First Amended Complaint (ECF No. 25) that details all of Plaintiff's exhaustion efforts – efforts that took over a year to complete because of repeated delays by Defendant – and resulted in Defendant refusing to provide any of the requested remedies. Plaintiff does not repeat the facts and arguments in his unopposed motion to lift the stay but incorporates them fully herein. The Court granted the unopposed motion to lift the stay the day after it was filed. (*See* ECF No. 26.) Defendant could have opposed the motion to lift the stay and insisted on a continued stay. It did not. Defendant should not be allowed to change course now. The argument lacks merit and ought to be treated as such.

Second, it is important to emphasize, Defendant is asking the Court to dismiss <u>facts</u> from a pleading that support Plaintiff's sole claim for breach of fiduciary duty. Defendant's request is devoid of any legal support – Defendant provides none in its Motion. That is because none exists. And Defendant is aware of the fact that its argument lacks merit, so Defendant is attempting to mislead by arguing that Plaintiff is bringing a separate "forfeiture claim." But that is plainly not the case. The Complaint contains only a single claim. The Eleventh Circuit does not require exhaustion of facts. Plaintiff is not required to "re-exhaust" administrative remedies during this litigation for each and every discrete imprudent action he uncovers Defendant having made during the dispute resolution process.

Third, in any event, the issue is also moot because out of an abundance of caution and seeking to avoid embroiling the Court in unnecessary litigation, Plaintiff initiated the administrative exhaustion process relating to the "facts" at issue on July 24, 2024. (*See* Unopposed Motion to Lift Stay, ¶ 13, ECF 25). Defendant has had these "facts" for nearly nine months. 29 C.F.R. § 2560.503–1(l) provides that where a plan administrator (like Defendant) fails to follow claim procedures consistent with the requirements of ERISA, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of ERISA on the basis that the administrator failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim within ninety days. Defendant has had the "facts" for nearly 270 days and still has not done anything – three times longer than what is proscribed. Defendant is using exhaustion only to needlessly delay this matter and unfairly prejudice Plaintiff.

Fourth, Defendant's Motion demonstrates beyond dispute that Defendant understands the facts alleged in Plaintiff's Complaint about forfeitures and that Defendant is refusing to provide any administrative remedies, and that Defendant is instead crafting ostensible legal defenses. Defendant has the audacity to argue that it needs additional time (more than 270 days) to consider the facts while demonstrating in its Motion to the Court and to Plaintiff the opposite is true. The administrative exhaustion requirement is supposed to help parties resolve disputes without unnecessary litigation. Defendant has turned the process on its head and is using it to increase litigation, for delay, and to unfairly prejudice Plaintiff and all Plan participants to whom Defendant is a fiduciary.

## VII.    DEFENDANT'S ARGUMENTS ABOUT FORFEITURES ARE SPECIOUS

Defendant asks the Court to dismiss Plaintiff's "forfeiture claim." (Motion at 22.) But again, Plaintiff has not made a "forfeiture claim." Again, Defendant is really asking the Court to dismiss

facts in support of Plaintiff's breach of fiduciary duty of prudence claim. The argument is specious. Rule 12(b)(6) motions are not proper vehicle to dismiss facts from pleadings. The Court should decline to use Rule(b)(6) to do so here.

      Plaintiff's Complaint alleges:

> Section 5.05 of the Plan document is titled "Allocation of Forfeitures." It provides: "[f]orfeitures **shall** first be applied to restore to Participants amounts previously forfeited pursuant to Section 5.03. Any remaining forfeitures **shall** be applied to reduce Plan administrative expenses; if none, any remaining forfeitures **shall** be used to reduce Company Contributions." Plan Document at p. 34. (Emphasis added.)

(Complaint, ¶ 7.) Plaintiff's Complaint further alleges that rather than follow the Plan document, as required by law, Defendant took for itself at least $13,497,959 in forfeitures during the relevant time period. (*Id.*) Defendant responds by admitting that it took the forfeitures but claims that it exercised discretion and acted reasonably in taking the money for itself. There is no record evidence of Defendant exercising any discretion. That is a disputed question of fact – at best.

      Defendant also wrongly argues that at the motion to dismiss stage the Court ought to bless Defendant's taking of forfeitures because on occasion courts grant plan sponsors discretion when interpreting plan documents. All of the cases Defendant relies upon for that notion are unavailing. These cases provide that on occasion discretion to the Defendant is appropriate when the Defendant makes decisions about providing plan benefits to plan participants. Those facts are not present here. Here, Defendant is alleged to have wrongfully taken for itself at least $13,497,959 as expressly prohibited by the Plan document. No discretion is warranted under these facts. It is akin to asking the Court to allow the fox to guard the henhouse. Moreover, no discretion is needed to resolve the forfeiture facts. The Plan document language about how forfeitures are to be used is clear and unequivocal. It is equally clear and unequivocal that Defendant violated the Plan document by taking the forfeitures for itself in the manner that it did.

22

Whether Defendant acted reasonably in taking all the forfeitures for itself is also a question of disputed fact. Defendant's bid to dismiss "facts" about its imprudence relating to forfeitures should be denied for this reason too.

But what is most troubling here is that Defendant represents to the Court that it decided to take for itself millions in forfeitures because it believed "Plan administrative expenses" did not include compensation to Fidelity because Fidelity was paid by Plan participants. This is a slight of hand at best and an egregious intentional misrepresentation at worst. Defendant executed a compensation agreement with Fidelity. That agreement is not yet before the Court. But Defendant knows it exists. That agreement requires Defendant to be legally responsible to Fidelity for Fidelity's compensation – not Plan participants. Further, that agreement makes clear that the services Fidelity provides to the Plan are categorized as Plan administrative expenses. It is disingenuous for Defendant to ask for dismissal of facts from a pleading when Defendant knows the facts in the pleading are true and Defendant is in possession of evidence that prove the veracity of the facts in the pleading.

Moreover, Defendant's representation to the Court here contradicts what Defendant has been telling the federal government for years. Indeed, each of the Plan's Form 5500 disclosures from 2017 to 2023 identify "recordkeeping fees" as Plan expenses. Not all of these disclosures have yet to be presented as evidence to the Court. However, Defendant attached the Form 5500 disclosure from 2021 as an exhibit to its Motion. *See e.g.,* 2021 5500 at 19, ECF No. 32-3. The Form 5500s for the other years in the relevant time period likewise refer to recordkeeping expenses and Fidelity's compensation as Plan expenses. So, while Defendant asks the Court to rule as a matter of law, without any evidentiary basis, that it exercised discretion and reasonably believed recordkeeping fees and Fidelity's compensation were not Plan expenses, for years Defendant has been telling the federal government and the rest of the world for that matter, under penalty of perjury no less, the exact

23

opposite. This is yet another reason why the Court ought to deny Defendant's Motion.

Finally, district courts across the country have denied motions to dismiss in similar ERISA forfeiture-based breach of the fiduciary duty of prudence cases, including most recently in *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *4 (N.D. Cal. Mar. 3, 2025) ("Plaintiff's argument that defendants were motivated solely by self-interest and conducted no reasoned and impartial decision-making process is plausible given that no other justification is readily apparent. This is sufficient for the Court to infer that defendants are liable for the misconduct alleged because courts look to motivation for loyalty claims and the thoroughness of an investigation for prudence claims."); *see also Perez-Cruet v. Qualcomm Inc.*, 23-cv-1890-BEN (MMP) (S.D. Cal. May. 24, 2024) (denying motion to dismiss); and *Rodriguez v. Intuit Inc.*, 23-cv-05053-PCP (N.D. Cal. Aug. 12, 2024) (largely denying motion to dismiss).

## VIII.   CONCLUSION

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a party's pleading shall be "freely given when justice so requires." Plaintiff respectfully requests leave to amend his Complaint should the Court grant any portion of Defendant's  Motion.

DATED this 26th day of March, 2025.

Respectfully submitted,

By: /s/ *Brandon J. Hill*
**WENZEL FENTON CABASSA, P.A.**
Brandon J. Hill, Esq. (FL. Bar No. 37061)
Luis A. Cabassa, Esq. (FL. Bar No. 53643)
Amanda E. Heystek, Esq. (Fl. Bar No. )
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
Telephone: (813) 337-7992
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

24

**MORGAN & MORGAN, P.A.**
Marc R. Edelman, Esq. (FL. Bar No. 96342)
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-577-4722
Email: medelman@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 26th day of March 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


*/s/ Brandon J. Hill*
**BRANDON J. HILL**

25