**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:23-cv-81314-AMC**

JOHN STEWART, on behalf of the NextEra
Energy, Inc. Employee Retirement Savings
Plan, individually and as a representative of a
class of participants and beneficiaries,

                    Plaintiff,

    v.

NEXTERA ENERGY, INC.,

                    Defendant.

**DEFENDANT NEXTERA ENERGY, INC.'S MOTION FOR**
**RULE 11 SANCTIONS AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT ............................................................................................................................ 11

I.      RULE 11 SANCTIONS ARE WARRANTED BECAUSE THE FLOAT
        ALLEGATIONS HAVE NO REASONABLE BASIS IN FACT AND
        PLAINTIFF AND HIS COUNSEL ARE AWARE OR SHOULD HAVE BEEN
        AWARE THAT THE ALLEGATIONS ARE FRIVOLOUS ........................................... 11

      A.     There Is No Reasonable Factual Basis For The Float Allegations ....................... 11

      B.     Plaintiff And Plaintiff's Counsel Are Aware, Or Should Have Been
           Aware, That The Float Allegations Are Frivolous ................................................. 13

CONCLUSION .......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Ins. Co. v. Meeker*,
   953 F.2d 1328 (11th Cir. 1992) .............................................12

*Bickley v. Caremark RX, Inc.*,
   461 F.3d 1325 (11th Cir. 2006) .............................................12

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991).............................................12

*Carey v. Kirk*,
   2025 WL 850256 (S.D. Fla. Feb. 13, 2025) .............................................11

*Footman v. Cheung*,
   341 F. Supp. 2d 1218 (M.D. Fla. 2004).............................................15

*Gulisano v. Burlington, Inc.*,
   34 F.4th 935 (11th Cir. 2022) .............................................11, 13, 14

*Homecare CRM, LLC v. Adam Grp. Inc. of Middle Tenn.*,
   952 F. Supp. 2d 1373 (N.D. Ga. 2013) .............................................14

*Huggins v. Lueder, Larkin & Hunter, LLC*,
   39 F.4th 1342 (11th Cir. 2022) .............................................15

*Khullar v. Goldstein*,
   2025 WL 1086774 (S.D. Fla. Mar. 28, 2025) .............................................11, 12

*Perrino v. S. Bell Tel. & Tel. Co.*,
   209 F.3d 1309 (11th Cir. 2000) .............................................12

*Ransaw v. Hernando Cnty. Sch. Bd.*,
   2007 WL 4163396 (M.D. Fla. Nov. 20, 2007) .............................................15

*Riccard v. Prudential Ins. Co.*,
   307 F.3d 1277 (11th Cir. 2002) .............................................14

*Shelton v. Chaudhry*,
   2025 WL 311516 (E.D. Pa. Jan. 27, 2025) .............................................14

*In re U.S. Sugar Corp. Litig.*,
   669 F. Supp. 2d 1301 (S.D. Fla. 2009) .............................................13

*Regents of the Univ. of Cal. ex rel. UC Davis Health Sys.*
  *v. Stidham Trucking, Inc.*,
  2017 WL 3840259 (E.D. Cal. Sept. 1, 2017)............................................................................14

**Docketed Cases**

*Angelo v. NCL Corp.*
  No. 1:22-cv-22962 (S.D. Fla.) ......................................................................................................2

*Catenac v. Lennar Corp.*,
  No. 1:22-cv-23232 (S.D. Fla. Jan. 12, 2023), ECF No. 19.........................................................2

*Cina v. Cemex, Inc.*,
  No. 4:23-cv-00117 (S.D. Tex. Jan. 12, 2023), ECF No. 1..........................................................2

*McWhorter v. SCI Shared Res., LLC*,
  No. 4:22-cv-02256 (S.D. Tex. Sept. 28, 2022), ECF No. 26.......................................................2

*Mirabal v. NCR Corp. Plan Admin. Comm.*,
  No. 1:22-cv-04879 (N.D. Ga. Apr. 3, 2023), ECF No. 37...........................................................2

*Molla v. Gerdau Ameristeel US, Inc.*,
  No. 8:22-cv-02094 (M.D. Fla. Feb. 5, 2025), ECF No. 85..........................................................2

**Other Authorities**

Fed. R. Civ. P.
  11..................................................................................................................................... *passim*
  11(b)....................................................................................................................................2, 11
  11(c)......................................................................................................................................1, 10

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, NextEra Energy, Inc. ("NextEra") respectfully moves for sanctions against Plaintiff and Plaintiff's counsel of record ("Plaintiff's Counsel") for submitting a pleading that includes false allegations that lack any reasonable factual basis, and which Plaintiff and Plaintiff's Counsel know to be without evidentiary support.  The allegations with no reasonable factual basis are statements that NextEra permitted the recordkeeper for the NextEra Energy, Inc. Employee Retirement Savings Plan ("Plan") to retain all earnings on uninvested cash (called "float") as supplemental compensation for itself, and that the supplemental compensation could exceed $4.57 million per year. Documents provided to Plaintiff during the compulsory administrative claims process demonstrate that (a) the Plan recordkeeper, Fidelity Investments Institutional ("Fidelity"), was required to reduce the Plan's recordkeeping fees for every dollar that it received from float; (b) Fidelity applied float earnings to reduce Plan recordkeeping fees; and (c) Fidelity provided NextEra with disclosures on reasonable estimates of the float that it earned on uninvested cash. NextEra respectfully requests that the Court strike the float allegations in the First Amended Class Action Complaint [ECF No. 27] (Am. Compl. ¶¶ 107-113, 128) and award NextEra the reasonable expenses, including attorney's fees, for bringing this motion.  *See* Fed. R. Civ. P. 11(c)(2).

## **INTRODUCTION**

Plaintiff alleges that NextEra breached a fiduciary duty of prudence to the Plan by permitting Fidelity to "keep" for itself "investment returns and/or any interest earned on Plan participant money" before or after it was invested in the Plan.  Am. Compl. ¶ 108.  These same

allegations appear in at least six other ERISA class actions brought by Plaintiff's Counsel.[1]  In this case, however, the float allegations are false, and NextEra provided Plaintiff's Counsel with evidence establishing that the allegations are false before they were included in the Amended Complaint.  The knowledge of falsity is evident from the information that Plaintiff received in a compulsory administrative proceeding that preceded the filing of the Amended Complaint.  In particular, NextEra provided Plaintiff with Plan recordkeeping contracts and regulatory disclosures confirming that NextEra did not permit Fidelity to "keep for itself" float earnings generated by Plan participant money.

Rule 11 requires attorneys signing a pleading to certify that all "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).  There is no factual support for Plaintiff's allegations about float.  Plaintiff's indifference to obvious facts supports the imposition of Rule 11 sanctions in this case.

## BACKGROUND

Plaintiff initially filed this ERISA class action in September 2023.  The Complaint alleged that the Plan's recordkeeping fees were excessive and that Fidelity kept millions of dollars in

---

[1]     *Molla v. Gerdau Ameristeel US, Inc.*, No. 8:22-cv-02094 (M.D. Fla. Feb. 5, 2025), ECF No. 85, ¶ 102 (Declaration of Brad E. Konstandt, dated May 13, 2025 ("Konstandt Decl."), Ex. A); *Mirabal v. NCR Corp. Plan Admin. Comm.*, No. 1:22-cv-04879 (N.D. Ga. Apr. 3, 2023), ECF No. 37, ¶ 56 (Konstandt Decl., Ex. B); *Catenac v. Lennar Corp.*, No. 1:22-cv-23232 (S.D. Fla. Jan. 12, 2023), ECF No. 19, ¶ 105 (Konstandt Decl., Ex. C); *Cina v. Cemex, Inc.*, No. 4:23-cv-00117 (S.D. Tex. Jan. 12, 2023), ECF No. 1, ¶ 44 (Konstandt Decl., Ex. D); *McWhorter v. SCI Shared Res., LLC*, No. 4:22-cv-02256 (S.D. Tex. Sept. 28, 2022), ECF No. 26, ¶ 120 (Konstandt Decl., Ex. E); *Angelo v. NCL Corp., LTD*, No. 1:22-cv-22962 (S.D. Fla. May 26, 2023), ECF No. 37, ¶ 111 (Konstandt Decl., Ex. F).  A comparison of the float allegations in this action to Plaintiff's Counsel's template allegations in other ERISA class actions is included at Appendix A.

float income.  ECF No. 1, ¶¶ 63-64, 67.  This Court stayed the case so that Plaintiff could pursue

administrative remedies available to him under the Plan.  ECF No. 17.

*The Administrative Claim.*  On October 30, 2023, Plaintiff submitted a claim to the Plan's

fiduciary committee ("Committee").  Konstandt Decl., Ex. G.  The administrative claim includes

the following allegations about the receipt by Fidelity of float:

- "NextEra imprudently caused the Plan's recordkeeper, Fidelity, to receive millions of dollars of excessive recordkeeping compensation from the Plan and its participants, including Plaintiff Stewart, by causing the Plan to pay Fidelity excessive direct fee compensation, excessive float compensation, and excessive revenue sharing compensation." *Id.* at 3.

- "With regard to fees via float, NextEra agreed that anytime Plan participants deposit or withdraw money from their individual accounts in the Plan that the money will first pass through a Fidelity clearing account.  Plan participant money typically sits in Fidelity's clearing account for 2-3 days.  NextEra also agreed Fidelity could keep the investment returns and/or any interest earned on Plan participant money while the money is in Fidelity's clearing account.  This is a form of indirect compensation that Fidelity receives as the recordkeeper for the Plan. The Plan's Annual Form 5500 for the year ending 2021 shows that more than $457 million was transferred in and out of the Plan in the year 2021. However, Fidelity has not tracked, monitored, or negotiated the amount of compensation Fidelity receives from income it earns on Plan participant money while the money is in Fidelity's clearing account.  If Fidelity earned just 1% on $500 million in 2021, then Fidelity pocketed $4.57 million in float income for 2021 alone.  And Fidelity earned float income through the Class Period." *Id.* at 4.

- "NextEra breached its fiduciary duty of prudence by allowing Fidelity to receive compensation from Plan participants via float without even knowing the amount of compensation Fidelity collects from interest on participant money as to the float, and because the amount of compensation Fidelity receives via float is excessive relative to the services provided and relative to prudent options in the marketplace." *Id.* at 4-5.

*The Committee's Evaluation of the Claim.*  The Committee evaluated Plaintiff's claim,

including the float allegations.  Konstandt Decl., Ex. H.  As part of its evaluation, the Committee

reviewed the Plan's recordkeeping contracts and Fidelity's actual regulatory disclosures about

earnings on uninvested cash in Fidelity's clearing account.  Based on its review of these and

other documents, the Committee concluded that Plaintiff's allegations about float were incorrect. *Id.* at 7.

The Committee's conclusion was substantially based on three key documents: the recordkeeping agreements, the regulatory disclosure statements prepared by Fidelity about float, and Fidelity invoices showing float as a line-item deduction from the recordkeeping fee. The recordkeeping agreements state that any net float earnings received by Fidelity must be used to reduce Plan recordkeeping fees in the form of an "offset." *See* Konstandt Decl., Ex. M at STEWART_0000756 (section titled "Annual Recordkeeping Fee Offsets" and listing "Offsets attributable to net float earnings"); *id.*, Ex. N at STEWART_0000950-951 (same).[2] The Fidelity disclosure documents confirm that its estimated float earnings were used to reduce Plan recordkeeping fees (and were not kept by Fidelity as supplemental compensation). *See* Konstandt Decl., Exs. O-U. The following excerpt of a 2017 disclosure statement provided to Plaintiff in the administrative proceeding shows how Fidelity credited float against the Plan recordkeeping fee, resulting in no incremental fees to Fidelity as a result of float:

---

[2]       The Bates numbers are stamped on the documents that the Committee made available to Plaintiff on April 26, 2024.



**Plan Summary**

This summary provides an overview of fees and other compensation that may be received by Fidelity and other service providers (such as non-Fidelity fund management fees) for the range of services provided to your plan. More detailed information is provided in the following sections.

| Client Name: NEXTERA ENERGY, INC. | | Plan Name: NEXTERA ENERGY, INC. EMPLOYEE RETIREMENT SAVINGS PLAN | | | | | |

Total Plan Assets: $3,233,925,697
Total Plan Participants: 13,397
As of 12/31/2017

| | | Recordkeeping | | Investment Management and Other | | Total | |
|---|---|---|---|---|---|---|---|
| | | % Assets | $ | % Assets | $ | % Assets | $ |
| **Investment Option-Related** | Asset-based | 0.00% | $0 | 0.16% | $5,064,196 | 0.16% | $5,064,196 |
| **Administrative and Other** | Billable Recordkeeping | 0.02% | $677,179 | | | 0.02% | $677,179 |
| | Transaction | | | 0.00% | $108,750 | 0.00% | $108,750 |
| | Other billable | | | 0.00% | $56,128 | 0.00% | $56,128 |
| | Float | 0.00% | $32,862 | | | 0.00% | $32,862 |
| | Total Amount | 0.02% | $710,041 | 0.16% | $5,229,074 | 0.18% | $5,939,115 |

| Pricing Information | % Assets | $ | Per Participant |
|---|---|---|---|
| Total Amount for Recordkeeping | 0.022% | $710,041 | $53.00 |
| Additional Value for Fidelity Products² | 0.000% | $0 | $0.00 |
| **Contractual Rate** | **0.022%** | **$710,041** | **$53.00** |

¹Fidelity maintains general or "omnibus" accounts to facilitate transactions of the employee benefit plans it services. "Float" refers to earnings from overnight investment of amounts in those omnibus accounts awaiting trade settlement or clearing of disbursements. The amount shown on the "Float" line above represents a calculated estimate of the amount of float, net of bank fees and other adjustments, retained by Fidelity that is attributable to your defined contribution plan's activity through these omnibus accounts during the preceding 12 months. The actual amount will be dependent on short-term interest rates and the plan's actual inflows and outflows. The amount reflected on the "Float" line above is exclusive of net float earnings attributable to the processing of Recurring Advisor Payments deducted from Participant accounts, if applicable. Please refer to your trust or service agreement or letter of authorization for additional information.

²Additional amount that Fidelity takes into account based on Fidelity products and/or services utilized as well as other factors.

Assumptions: The fees and other compensation set forth in this report are based in part on certain information provided to Fidelity and the assumptions described in your trust or service agreement. Fees may be subject to change as a result of changes to those assumptions or the information upon which the assumptions are based or as otherwise provided in the trust or service agreement. In addition, all fees and other compensation are subject in their entirety to the terms and conditions of the trust or service agreement.

Konstandt Decl., Ex. O at STEWART_0003224 (red highlighting applied).

The above excerpt documents the float offset against the contractual recordkeeping fee. Specifically, as of December 2017, there were 13,397 participants in the Plan. The recordkeeping fee was $53.00 per participant, for a total contractual recordkeeping obligation of $710,041. During that same year, Fidelity received an estimated $32,862 in float earnings. The recordkeeping contract required Fidelity to reduce the recordkeeping fee by any net revenue earned on uninvested cash. Accordingly, Fidelity deducted the estimated $32,862 in float earnings from the contractual recordkeeping fee, which resulted in a discounted recordkeeping fee of $677,179.

Plaintiff received regulatory disclosure documents for every year of the putative class period through the filing of the Complaint. Konstandt Decl., Exs. O-U. There is a regulatory disclosure document for 2021—the year that Plaintiff fancifully suggests that Fidelity received as much as $4.57 million in float income. *See* Am. Compl. ¶ 109. In that year, Fidelity received $0

in float income.  An excerpt of the fees and compensation received by Fidelity in 2021 is set

forth below:



Konstandt Decl., Ex. S at STEWART_003260 (red highlighting applied).

In 2021, there were 15,571 Plan participants.  The recordkeeping fee in 2021 was $47.00

per participant, for a total contractual recordkeeping fee of $731,837.  Short term interest rates

were near zero in 2021, and there was $0 dollars in float.  There were, therefore, no offsets to the

contractual recordkeeping fee.

Like the 2017 and 2021 excerpts above, each of the quarterly regulatory disclosure

documents confirms that float earnings reduced the Plan recordkeeping fees.[3]  The Committee's

written opinion, dated April 26, 2024, informed Plaintiff that Fidelity did not "pocket"

---

[3]       *See* Konstandt Decl., Ex. O at STEWART_0003224 (2017); Konstandt Decl., Ex. P at
STEWART_0003232 (2018); Konstandt Decl., Ex. Q at STEWART_0003241 (2019); Konstandt
Decl., Ex. R at STEWART_0003251 (2020); Konstandt Decl., Ex. S at STEWART_0003260
(2021); Konstandt Decl., Ex. T at STEWART_0003269 (2022); Konstandt Decl., Ex. U at
STEWART_0003141 (Q1 & Q2 2023).

compensation from float.  Konstandt Decl., Ex. H at 7 ("The [2021] recordkeeping agreement . . . reflects the annual $47 per-participant recordkeeping fee and the requirement—in place throughout the time period at issue—that any net float earnings Fidelity received be offset against the Plan's recordkeeping fees.").

The Plan documents provide claimants with an opportunity to evaluate the Committee's conclusions and appeal a decision that a claimant believes to be in error.  The Committee informed Plaintiff of his right to "request and receive, free of charge, reasonable access to and copies of documents" that the Committee reviewed in evaluating the claim so that he could independently evaluate the evidence "in conjunction with [his] appeal."  *Id.* at 10.  Neither Plaintiff nor Plaintiff's Counsel requested the documents before submitting his appeal.  *See* Declaration of David N. Levine, dated May 12, 2025 ("Levine Decl."), ¶¶ 4, 7-8; Declaration of Brittany McIntosh, dated May 12, 2025 ("McIntosh Decl."), ¶ 2.

*Plaintiff's Administrative Appeal.*  On July 24, 2024, Plaintiff appealed the Committee's decision.  Konstandt Decl., Ex. I.  Plaintiff acknowledged the Committee's conclusion that float earnings were used to reduce Plan fees.  *Id.* at 5.  Plaintiff asserted, however, that "there [was] no evidence the float earnings were applied by Fidelity in accordance with the recordkeeping agreement."  *Id.*  Had Plaintiff reviewed the administrative record, as evidenced in the excerpts from the regulatory disclosure statements set forth above, Plaintiff would have seen that, in fact, Fidelity deducted estimated float earnings from the contractual recordkeeping obligation, resulting in a reduction in recordkeeping fees.

On September 12, 2024, nearly two months *after* he filed an appeal, Plaintiff for the first time requested documents related to his administrative claim.  Konstandt Decl., Ex. J.  The Committee provided Plaintiff with a link to access the administrative record that it had first made

available to him in April 2024 (which included, among other documents, the recordkeeping

contracts and the Fidelity regulatory disclosures), and offered Plaintiff the opportunity to

"supplement [his] Appeal with materials from the full administrative record or any other

documents or information supporting the Appeal." Konstandt Decl., Ex. K at 2. Plaintiff did not

supplement his appeal submission. Levine Decl., ¶ 9.

      ***Decision on the Administrative Appeal.*** The Committee reevaluated the record in

response to Plaintiff's appeal of the administrative decision. It specifically reassessed whether

the float earnings were applied by Fidelity in accordance with the recordkeeping agreement. It

concluded that Fidelity had applied the float earnings to reduce the Plan's recordkeeping fee as

required by the recordkeeping agreements. Konstandt Decl., Ex. L at 9.

      On December 23, 2024, the Committee affirmed its decision to deny Plaintiff's claim,

describing Plaintiff's float allegations as "frivolous." *Id.* The Committee's written opinion

explained that Fidelity did not "pocket" float earnings as supplemental compensation. *Id.* The

recordkeeping agreements and the quarterly regulatory disclosures provided by Fidelity

demonstrate that all disclosed float earnings "resulted in a dollar-for-dollar reduction in the

recordkeeping fees charged by Fidelity." *Id.* "In particular," the Committee explained, "the Plan

received quarterly disclosures from Fidelity pursuant to Section 408(b)(2) of ERISA," which

plainly show that all float earnings had been applied to reduce Plan fee. *Id.* Those disclosures

"also contradict the hypothetical scenario recited in Mr. Stewart's Initial Claim and Appeal that

'[i]f Fidelity earned 1% on $500 million . . . then Fidelity pocketed $4.57 million in float

income,'" given that "money on which Fidelity could earn float generally only sits in a Fidelity

account for approximately a couple of days, and, therefore, does not accrue full annual interest or

anything close to it." *Id.*

***The Amended Complaint***.  Notwithstanding receipt of evidence that the recordkeeper did not retain float earnings as supplemental compensation (Konstandt Decl., Exs. M-U), Plaintiff filed an Amended Complaint alleging that Fidelity juiced its recordkeeping compensation through the receipt of float.  Am. Compl. ¶¶ 107-113.  There are additional, demonstrably false statements in the Amended Complaint.  They include the following:

- The allegation that Fidelity could have received as much as $4.57 million in float earnings in 2021 is demonstrably false.  Am. Compl. ¶ 109.[4]  In 2021—a low interest year—net float earnings generated on money in Fidelity's clearing account totaled $0.  Konstandt Decl., Ex. S at STEWART_0003049-3057, _0003122-3130, _0003196-3204, _0003259-3267 (Fidelity quarterly disclosures for 2021).

- The allegation that NextEra did not "negotiate[] the amount of compensation Fidelity receives from income Fidelity earns on Plan participant money while the money is in Fidelity's clearing account" is demonstrably false.  Am. Compl. ¶ 109.  The recordkeeping contracts between Fidelity and NextEra require Fidelity to reduce the Plan's recordkeeping fees by any amount that Fidelity received from float.  *See supra* at 3-4 (citing Konstandt Decl., Exs. M & N).

- The allegation that it "[i]t appears Fidelity pocketed the float compensation" is demonstrably false.  Am. Compl. ¶ 113.  The disclosure statements documented that Fidelity reduced the Plan's recordkeeping fees for each disclosed dollar earned in float.  *See supra* at 3-6.

***Rule 11 Procedures***.  On April 24, 2025, NextEra wrote to Plaintiff's Counsel to notify them that the float allegations are demonstrably false and in violation of Rule 11.  Konstandt Decl., Ex. V.  NextEra requested that Plaintiff amend his pleading to remove the erroneous allegations within 10 days.  *Id.* at 1.  Plaintiff's Counsel responded on April 30, 2025.  Konstandt Decl., Ex. W.  Counsel's letter conceded the following: (i) that "any net float earnings Fidelity received [would be] offset against the Plan's recordkeeping fees (e.g., Fidelity's compensation)"; (ii) that Fidelity provided NextEra with quarterly disclosures confirming the application of float

---

[4]     Alleging that "[i]f Fidelity earned just 1% on $500 million in 2021, then Fidelity pocketed $4.57 million in float income for 2021 alone.  And Fidelity earned float income throughout the relevant period."

to offset Plan recordkeeping fees; and (iii) that Plaintiff's Counsel had "carefully reviewed" those disclosures before filing the Amended Complaint.  Konstandt Decl., Ex. W at 1-2. Although Plaintiff conceded these facts (which directly refute the contrary allegations in the Amended Complaint), Plaintiff's Counsel declined to amend the pleading.  Instead, Plaintiff's Counsel stated that the float calculations are "estimates" and that Plaintiff did "not have any information about NextEra asking Fidelity to provide the actual earnings it made on float, verifying those numbers." *Id.* at 2.  NextEra responded on May 8, 2025, informing Plaintiff that his attempt to reframe the allegations is inconsistent with the case that Plaintiff had pled, would not state a claim, and asking that Plaintiff remove the erroneous float allegations.  Konstandt Decl., Ex. X.  NextEra requested that Plaintiff's Counsel confirm by May 12, 2025 whether they would "withdraw or amend the float allegations in the Amended Complaint." *Id.* at 4.  Plaintiff's Counsel did not respond.  Konstandt Decl., ¶ 26.

On May 14, 2025, NextEra served Plaintiff with this formal motion for sanctions pursuant to Rule 11(c).  Supplemental Declaration of Brad E. Konstandt, dated July 14, 2025 ("Konstandt July Decl."), ¶ 2.  There is a 21-day cure period under Rule 11(c). *See* Fed. R. Civ. P. 11(c)(2).  On June 6, 2025, NextEra wrote to Plaintiff's Counsel and informed them that the cure period for the erroneous float allegations was approaching.  Konstandt July Decl., ¶ 4.  The parties conferred on this motion by phone on June 9, 2025 but were unable to resolve their disagreement. *Id.*, ¶ 5.  Plaintiff did not cure.  Konstandt July Decl., ¶¶ 6-7.  This motion followed.

## ARGUMENT

**I.    RULE 11 SANCTIONS ARE WARRANTED BECAUSE THE FLOAT ALLEGATIONS HAVE NO REASONABLE BASIS IN FACT AND PLAINTIFF AND HIS COUNSEL ARE AWARE OR SHOULD HAVE BEEN AWARE THAT THE ALLEGATIONS ARE FRIVOLOUS**

In deciding whether Rule 11 sanctions are warranted, the Court "must conduct a two-step inquiry, determining '(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous.'" *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)); *accord, e.g.*, *Khullar v. Goldstein*, 2025 WL 1086774, at *3 (S.D. Fla. Mar. 28, 2025); *Carey v. Kirk*, 2025 WL 850256, at *24-25 (S.D. Fla. Feb. 13, 2025). Because NextEra provided Plaintiff and Plaintiff's Counsel with documents in the administrative proceeding demonstrating that the float allegations were frivolous, and Plaintiff and Plaintiff's Counsel reasonably should know that the float allegations are frivolous, Rule 11 sanctions are warranted.

### A.    There Is No Reasonable Factual Basis For The Float Allegations

Rule 11(b) requires an attorney presenting any pleading to "certif[y] that to the best of the [attorney's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances[,]" the pleading's "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b), (b)(3). "A factual claim is frivolous when it has no reasonable factual basis." *Gulisano*, 34 F.4th at 942. "If the attorney failed to make a reasonable inquiry, then 'the court must impose sanctions despite the attorney's good faith belief that the claims were sound.'" *Id.* (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). Whether a counsel's inquiry is reasonable is determined based on the

circumstances surrounding the representation.  *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 551 (1991).  The circumstances that courts have considered in assessing the reasonableness of an inquiry have included "such factors as how much time for investigation was available . . . whether [the attorney] had to rely on a client for information as to the facts . . . or whether he depended on . . . another member of the bar."  *Khullar*, 2025 WL 1086774, at *3 (quoting *Worldwide Primates*, 87 F.3d at 1256).

It is objectively unreasonable to make representations—like the float allegations in this action—that are refuted by the regulatory disclosures, recordkeeping contracts, recordkeeping invoices, and other documents provided to Plaintiff's Counsel prior to the filing of the Amended Complaint.  *See Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1333 (11th Cir. 1992).  In *Aetna*, the Eleventh Circuit affirmed a sanctions award against a lawyer who had asserted and pursued a negligence counterclaim that was refuted by the "numerous affidavits, deposition excerpts and other evidentiary materials" provided in discovery by defendant.  *Id.* at 1330.  Although the counterclaim alleged that certain workers were agents, the documents provided in discovery "clearly showed" that the workers were independent contractors.  *Id.* at 1332-33.

The documents that NextEra provided to Plaintiff and his counsel in the administrative proceeding compel this same result.  The recordkeeping agreements, the Fidelity disclosure documents illustrating the effect of the float offsets, and the Committee's detailed written opinions all confirm that the float allegations are frivolous.  *Supra* at 3-6.  Administrative proceedings in this Circuit are designed to allow fact development to reduce frivolous lawsuits under ERISA.  *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000).  It would frustrate the purposes of administrative proceedings—and thus the purposes of the Eleventh Circuit's exhaustion

12

requirement for ERISA claims—if Plaintiff were free to ignore the facts and documents

produced in those proceedings, only to populate a subsequent federal complaint with objectively

frivolous allegations.  *See In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1315 (S.D. Fla.

2009) (exhaustion requirement "safeguards against the expense of possibly unnecessary

litigation").  But precisely that has occurred in this action.

> **B.      Plaintiff And Plaintiff's Counsel Are Aware, Or Should Have Been Aware,
>           That The Float Allegations Are Frivolous**

Plaintiff and Plaintiff's Counsel "should have been aware" that the Amended

Complaint's float allegations are false and objectively frivolous.  *Gulisano*, 34 F.4th at 942.

NextEra alerted Plaintiff and his counsel to the treatment of float in the recordkeeping

agreements and the verification of float's application in quarterly disclosures.  Plaintiff and

Plaintiff's Counsel's continued assertion that NextEra allowed Fidelity to keep float exhibits a

deliberate indifference to obvious facts.  As icing on this cake, Plaintiff's Counsel elected to lean

into these demonstrably false allegations after service of the instant motion.  At oral argument on

NextEra's motion to dismiss the Amended Complaint, with full knowledge that Fidelity is

contractually prohibited from retaining float for itself, Plaintiff's Counsel nonetheless argued to

this Court:

> And that brings in the revenue sharing and the float compensation.  And ERISA
> does provide—and this is why the float allegations are in the complaint – that plan
> fiduciaries like NextEra, they have a duty – and I'm going to quote the statute – to
> defray plan – reasonable plan expenses.
>
> If the recordkeeper is being compensated via float, and the recordkeeper tells the
> plan in the 408(b)(2) disclosures that counsel mentioned to you, the recordkeeper
> tells – Fidelity tells NextEra, hey, one of the ways in which we are being
> compensated is through the taking of float.  *All of this money that comes in and
> out, in 2021 it was almost $500 million, Fidelity, who is one of the nation's most
> preeminent, powerful makers of money, investors of money, takes that money and
> invests it and keeps it all for itself.*

ECF No. 47 at 47:5-19 (emphasis added).

The "deliberate indifference" standard is met when "even the most minimal investigation would have alerted" the litigant or attorney of an allegation's falsity. *Gulisano*, 34 F.4th at 944 (quoting *Worldwide Primates*, 87 F.3d at 1255). In *Gulisano*, the minimal investigation required about a defendant's status as a corporation was a review of Florida public records. *See id.* at 943-45; *see also, e.g.*, *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (sanctioning attorney and client for pursuing claim that was not "merely weak," but frivolous in light of information available to them). Courts also have concluded that there was deliberate indifference to the facts where litigants and their counsel had documents and deposition testimony that were inconsistent with their pleadings. In *Shaw v. Boaz*, for example, the court found that "emails and deposition testimony" available to the attorney indicated that the facts about a phone call were different than what an attorney alleged. 2019 WL 13059931, at *3 (N.D. Ga. Nov. 25, 2019). The court concluded that the attorney's "conduct by maintaining th[e] contention" amounted to a sanctionable "deliberate indifference to obvious facts." *Id.* Similarly, in *Lampf v. Trazenfeld*, the plaintiffs' counsel was warned that plaintiffs had sued a defendant that no longer existed, and that they had incorrectly alleged that the defendant was the managing member of a Florida LLC. 2024 WL 5164854, at *2 (S.D. Fla. Dec. 5, 2024). The falsity of those allegations should have been clear to counsel from Florida's public records. *Id.* Counsel's persistence in pressing the false allegations resulted in an award of sanctions. *See id.* at *4-5.[5]

---

[5]    *Accord Shelton v. Chaudhry*, 2025 WL 311516, at *4-5 (E.D. Pa. Jan. 27, 2025) (awarding sanctions where counsel filed pleading containing blatant errors, which were contradicted by police reports admittedly in counsel's possession); *Regents of the Univ. of Cal. ex rel. UC Davis Health Sys. v. Stidham Trucking, Inc.*, 2017 WL 3840259, at *6-7 (E.D. Cal. Sept. 1, 2017) (awarding sanctions where false allegations were contradicted by emails that counsel received from defendant prior to filing); *Homecare CRM, LLC v. Adam Grp. Inc. of Middle Tenn.*, 952 F. Supp. 2d 1373, 1380-84 (N.D. Ga. 2013) (awarding sanctions where plaintiff and its counsel "should have been aware" of falsity of trade-secret misappropriation

Here, the deliberate indifference standard is satisfied.  Plaintiff received documents in the administrative proceeding that directly refuted the float allegations in the Amended Complaint.  *See supra* at 3-6.  Moreover, on May 14, 2025, NextEra provided Plaintiff with a copy of the instant Rule 11 motion so that he voluntarily could amend or remove the frivolous float allegations.  *See supra* at 10; Konstandt July Decl., ¶ 2.  Yet, Plaintiff continued to press the frivolous float allegations during the safe harbor period, including in oral argument to this Court at the hearing on NextEra's motion to dismiss.  *See Lampf*, 2024 WL 5164854, at *2 ("[O]ne purpose of Rule 11 is to penalize those who refuse to admit their mistakes during the safe harbor period."); *accord Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1344 (11th Cir. 2022).

The evidence of deliberate indifference is compounded in this case because the frivolous allegations appear to be recycled from Plaintiff's Counsel's other ERISA litigations.  *See* Appendix A.  The use of template allegations falls short of the case-specific "reasonable inquiry" that Rule 11 requires.  *See Footman v. Cheung*, 341 F. Supp. 2d 1218 (M.D. Fla. 2004), *aff'd in relevant part*, 139 F. App'x 144 (11th Cir. 2005) (per curiam).  In *Footman*, a pleading alleged that the plaintiff was wheelchair-bound because of multiple sclerosis (MS).  *Id.* at 1226.  In reality, the plaintiff suffered from diabetes, not MS, and his counsel had made the erroneous MS allegation by "inadvertently interchang[ing] pleadings from a different case."  *Id.*  Counsel's copy-pasting error reflected "a deliberate indifference to obvious facts" about his client—and even if the initial error was merely "the result of confusion or carelessness," the court noted

---

allegations in light of plaintiff's own internal documents establishing differences between relevant products); *Ransaw v. Hernando Cnty. Sch. Bd.*, 2007 WL 4163396, at *6 (M.D. Fla. Nov. 20, 2007) (awarding sanctions where plaintiff's counsel remained deliberately indifferent to government order permanently revoking plaintiff's licensure, which disproved complaint's allegation that plaintiff was legally licensed to be a school principal in Florida).

disapprovingly that "counsel never sought to amend the pleading" after the falsity of the copy-pasted MS allegation had become obvious. *Id.* at 1229.

So too here. The hypothetical about returns on float in 2021, the claim that the Plan specifically arranged to allow the recordkeeper to retain the earnings, and the assertion that the Plan fiduciaries did not monitor float appear across multiple actions brought by this counsel. *See* Appendix A. In this action, the allegations are objectively false. The Court should sanction Plaintiff and Plaintiff's Counsel for their refusal to correct template allegations whose truth, in light of the administrative proceeding and record, cannot be defended in good faith.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this motion for sanctions, strike the frivolous float allegations from the Amended Complaint (¶¶ 107-113, 128), and order Plaintiff and Plaintiff's Counsel to reimburse NextEra for the reasonable attorneys' fees and expenses it has incurred to move on these allegations.

# APPENDIX A

| Stewart v. NextEra

First Amended Class Action Complaint | Mirabal v. NCR Corp. No. 1:22-cv-04879 (N.D. Ga.)

First Amended Class Action Complaint | Cina v. Cemex No. 4:23-cv-00117 (S.D. Tex.)

Class Action Complaint | Catenac v. Lennar No. 1:22-cv-23232 (S.D. Fla.)

First Amended Class Action Complaint | Molla v. Gerdau Ameristeel No. 8:22-cv-02094 (M.D. Fla.)

Second Amended Class Action Complaint | Angelo v. NCL Corp. No. 1:22-cv-22962 (S.D. Fla.)

First Amended Class Action Complaint | McWhorter v. SCI No. 4:22-cv-02256 (S.D. Tex.)

First Amended Class Action Complaint |
|---|---|---|---|---|---|---|

| **Allegation that the Plan Sponsor Agreed that the Recordkeeper Could Keep Float Earnings** ||||||| 

| ¶ 108: Regarding fees via float, Nextera agreed that anytime Plan participants deposit or withdraw money from their individual accounts in the Plan, the money will first pass through a Fidelity clearing account. Plan participant money typically sits in Fidelity's clearing account for 2-3 days, sometimes much longer. *Nextera also agreed Fidelity could keep the investment returns and/or any interest earned on Plan participant money while the money is in Fidelity's clearing account.* This is a form of indirect compensation that Fidelity receives as the recordkeeper | ¶ 56: With regard to fees via float, Defendant agreed that anytime Plan participants deposit or withdraw money from their individual accounts in the Plan that the money will first pass through a Fidelity clearing account. Plan participant money typically sits in Fidelity's clearing account for 2-3 days. *Defendant also agreed Fidelity could keep the investment returns and/or any interest earned on Plan participant money while the money is in Fidelity's clearing account.* This is a form of indirect compensation that Fidelity receives as the recordkeeper for the Plan. (emphasis | ¶ 44: With regard to fees via float, Cemex agreed that anytime Plan participants deposit or withdraw money from their individual accounts in the Plan that the money will first pass through a Fidelity clearing account. Plan participant money typically sits in Fidelity's clearing account for 2-3 days. *Cemex also agreed Fidelity could keep the investment returns and/or any interest earned on Plan participant money while the money is in Fidelity's clearing account.* This is a form of indirect compensation that Fidelity receives as the recordkeeper for the Plan. (emphasis | ¶ 104: As set forth above about the "float," Defendant agreed that anytime Plan participants deposit or withdraw money from their individual accounts, that the money will first pass through a Prudential clearing account.

¶ 105: *Defendant agreed Prudential could keep all the interest and investment related revenue earned on Plan participant money while participant money is in Prudential's clearing account (often for several days).* This is another form of indirect compensation that Prudential receives from the Plan. (emphasis added) | ¶ 102: With regards to the float, Defendant agreed anytime Plan participants deposit or withdraw money from their individual accounts in the Plan, the money will first pass through a Fidelity clearing account. Plan participant money typically sits in Fidelity's clearing account for 2-3 days. *Defendant also agreed Fidelity could keep the investment returns and/or any interest earned on Plan participant money while the money is in Fidelity's clearing account.* (emphasis added) | ¶ 110: Upon information and belief, Defendants agreed that anytime Plan participants deposit or withdraw money from their individual accounts, that the money will first pass through a Prudential clearing account.

¶ 111 *Upon information and belief, Defendants agreed Prudential could keep all of the interest earned on Plan participant accounts while participant money is in Prudential's clearing account.* This is a form of indirect compensation that Prudential receives as the recordkeeper for the Plan. (emphasis added) | ¶ 120: Not only that, Defendants agreed that anytime Plan participants deposit or withdraw money from their individual accounts, that the money will first pass through a Charles Schwab clearing account. *Defendants agreed Charles Schwab could keep all of the interest earned on Plan participant accounts while participant money is in Charles Schwab's clearing account.* This is a form of indirect compensation that Charles Schwab receives as the recordkeeper for the Plan, and is even identified (but the amount not disclosed) in the SCI 5500 under code "62." (emphasis |

# APPENDIX A

| Stewart v. NextEra First Amended Class Action Complaint | Mirabal v. NCR Corp. No. 1:22-cv-04879 (N.D. Ga.) First Amended Class Action Complaint | Cina v. Cemex No. 4:23-cv-00117 (S.D. Tex.) Class Action Complaint | Catenac v. Lennar No. 1:22-cv-23232 (S.D. Fla.) First Amended Class Action Complaint | Molla v. Gerdau Ameristeel No. 8:22-cv-02094 (M.D. Fla.) Second Amended Class Action Complaint | Angelo v. NCL Corp. No. 1:22-cv-22962 (S.D. Fla.) First Amended Class Action Complaint | McWhorter v. SCI No. 4:22-cv-02256 (S.D. Tex.) First Amended Class Action Complaint |
|---|---|---|---|---|---|---|
| for the Plan. (emphasis added) | added) | added) | | | | added) |
| **Allegation that "If [the Recordkeeper] Earned Just 1%" from Float** | | | | | | |
| ¶ 109: The Plan's Annual Form 5500 for the year ending 2021 shows that more than $457 million was transferred in and out of the Plan in the year 2021 alone. However, Nextera has not tracked, monitored, or negotiated the amount of compensation Fidelity receives from income Fidelity earns on Plan participant money while the money is in Fidelity's clearing account. *If Fidelity earned just 1% on $500 million in 2021, then Fidelity pocketed $4.57 million in float income for 2021 alone.* And Fidelity earned float income throughout the relevant period. To identify precisely | ¶ 56: The Plan's Annual Form 5500 for the year ending 2021 shows that more than $1 billion dollars were transferred in and out of the Plan. However, Defendant has not tracked, monitored, nor negotiated the amount of compensation Fidelity receives from the income it earns on Plan participant money while the money is in Fidelity's clearing account. *If Fidelity earned 1% on $1 billion, then Fidelity pocketed $10 million in float income for 2021 alone.* (emphasis added) | | ¶ 105: Because there is over $1.3 billion in the Plan, the float compensation Prudential receives from the Plan is substantial. The Plan's 2021 5500 provides that there were $89,402,612 in contributions to the Plan in 2021, and $99,242,123 in expenses, or money paid out of the Plan in 2021. Thus, in 2021 alone, Prudential earned interest and investment related revenue on more than $188,644,735 ($188 million) of Plan participant money while the money was in Prudential's account. But Defendant did not take any measures to understand, account for, negotiate, limit, or end altogether this compensation | ¶ 105: Defendant never requested or received from Fidelity any information or calculations showing how Fidelity invested the hundreds of millions of dollars going into and out of the Plan, and what Fidelity actually earned on this money. *If Fidelity earned 1% on the money flowing in and out of the Plan, it would have generated millions of dollars in additional compensation*. (emphasis added) | | |

# APPENDIX A

| | | | | | | |
|---|---|---|---|---|---|---|
| what Fidelity earned in float income, Plaintiff must obtain that information from Fidelity because Nextera imprudently failed to do so and has otherwise made no meaningful disclosures to Plan participants concerning the compensation Fidelity receives via float. And no statements on the Plan's Annual 5500 Disclosures identify how much compensation Fidelity received via float. (emphasis added) | | | . A prudent fiduciary is required to do so under ERISA. Defendant's imprudence caused the Plan losses. *Had Prudential earned 1% on the $188,000,000 it would have pocketed $1,880,000 ($1.88 million) in 2021 alone from float alone. The numbers are staggering.* (emphasis added) | | | |

| *Stewart v. NextEra* First Amended Class Action Complaint | *Mirabal v. NCR Corp.* No. 1:22-cv-04879 (N.D. Ga.) First Amended Class Action Complaint | *Cina v. Cemex* No. 4:23-cv-00117 (S.D. Tex.) Class Action Complaint | *Catenac v. Lennar* No. 1:22-cv-23232 (S.D. Fla.) First Amended Class Action Complaint | *Molla v. Gerdau Ameristeel* No. 8:22-cv-02094 (M.D. Fla.) Second Amended Class Action Complaint | *Angelo v. NCL Corp.* No. 1:22-cv-22962 (S.D. Fla.) First Amended Class Action Complaint | *McWhorter v. SCI* No. 4:22-cv-02256 (S.D. Tex.) First Amended Class Action Complaint |
|---|---|---|---|---|---|---|
| **Allegation that the Plan Sponsor Allowed the Recordkeeper to Receive Compensation from Plan Participants Via Float "Without Even Knowing" the Amount** | | | | | | |
| ¶ 110: *Nextera breached its fiduciary duty of prudence by allowing Fidelity to receive compensation from Plan participants via float without even knowing the amount of* | ¶ 56: *Defendant breached its fiduciary duty of prudence by allowing Fidelity to receive compensation from Plan participants without even knowing the amount of compensatio* | ¶ 44: *Cemex breached its fiduciary duty of prudence by allowing Fidelity to receive compensation from Plan participants without even knowing the amount of compensatio n Fidelity* | ¶ 106: *Defendant breached its fiduciary duties of prudence by allowing Prudential to receive float compensatio n from Plan participants without even knowing the amount of such* | ¶ 110: *Defendant breached its fiduciary duty of prudence by allowing Prudential to receive compensation from Plan participants via float without even knowing the actual amount of compensation* | ¶ 111: *Defendants breached their fiduciary duty of prudence by allowing Prudential to receive compensatio n from Plan participants without even knowing the amount of* | ¶ 120: *Defendants breached their fiduciary duty of prudence by allowing Charles Schwab to receive compensation from Plan participants without even knowing the* |

# APPENDIX A

| | | | | | | |
|---|---|---|---|---|---|---|
| *compensation Fidelity collects from interest or returns on participant money as to the float,* and because the amount of compensation Fidelity receives via float is excessive relative to the services provided and relative to prudent options in the marketplace. (emphasis added) | *n Fidelity collects from interest on participant money as to the float,* and because the amount of indirect compensation Fidelity receives via float is excessive relative to the services provided and relative to prudent options in the marketplace. (emphasis added) | *collects from interest on participant money as to the float,* and because the amount of indirect compensation Fidelity receives via float is excessive relative to the services provided and relative to prudent options in the marketplace. (emphasis added) | *compensation* or factoring in the amount of such compensation into the total amount of compensation Defendant agreed Lennar could take from Plan participant retirement savings. (emphasis added) | *Fidelity collects from interest/earnings on participant money as to the float,* and because the amount of indirect compensation Fidelity receives via the float is a component of the excessive compensation relative to the specific services provided to the Plan by Fidelity, and excessive relative to prudent options in the marketplace, and otherwise utterly failing to comply with DOL guidance concerning how prudent fiduciaries ought to treat float compensation. (emphasis added) | *compensation Prudential collects from interest on participant money.* (emphasis added) | *amount of compensation Charles Schwab collects from interest on participant money.* (emphasis added) |

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(2) of the District Court for the Southern District of Florida,

counsel for NextEra conferred with counsel for Plaintiff prior to filing this Motion.  Plaintiff

opposes the relief sought in this Motion.


Dated:  July 14, 2025                                       Respectfully submitted,


**LAWSON HUCK GONZALEZ, PLLC**          **WILMER CUTLER PICKERING**
                                        **HALE AND DORR LLP**

*/s/ Jason Gonzalez*
Jason Gonzalez                          Lori A. Martin (admitted *pro hac vice*)
Florida Bar No: 146854                  Brad E. Konstandt (admitted *pro hac vice*)
215 S. Monroe Street, Suite 320         7 World Trade Center
Tallahassee, FL 32301                   250 Greenwich Street
(t) (850) 825-4334                      New York, NY 10007
jason@lawsonhuckgonzalez.com            (t) (212) 230-8800
marsha@lawsonhuckgonzalez.com           lori.martin@wilmerhale.com
*Counsel for Defendant NextEra Energy, Inc.*    brad.konstandt@wilmerhale.com

                                        *Counsel for Defendant NextEra Energy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 14th day of July, 2025, the foregoing was

electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice

of electronic filing to the following:

Marc R. Edelman
MORGAN & MORGAN
201 N. Franklin Street, Suite 700
Tampa, FL 33602
(t) (813) 577-4722
medelman@forthepeople.com
*Counsel for Plaintiff*

Brandon J. Hill
Luis A. Cabassa
Amanda E. Heystek
WENZEL FENTON CABASSA, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
(t) (810) 337-7992
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com
*Counsel for Plaintiff*

Michael C. McKay
MCKAY LAW LLC
5635 North Scottsdale Road, Suite 170
Scottsdale, AZ 85250
(t) (480) 681-7000
Email: mmckay@mckaylaw.us

*/s/ Jason Gonzalez*
Jason Gonzalez